**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (Bar No. 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333

**The Law Office of Bradley I. Kramer**
Bradley I. Kramer, Esq. (SBN 234351)
bkramer@biklaw.com
8840 Wilshire Blvd. Suite 350
Beverly Hills, California 90211-2606
Telephone: (310) 289-2600

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ROSA ZAZUETA; OCTAVIO
ZAZUETA, individually and as
successors-in-interest to OCTAVIO
ZAZUETA Jr., deceased;

                          Plaintiffs,

   v.

COUNTY OF RIVERSIDE; CITY OF
INDIO; KYLE LAWRENCE; and
DOES 1-10,

                          Defendants.

Case No.  5:23-cv-01825-WLH-SHK

*District Judge Wesley L. Hsu*
*Magistrate Judge Kewalramani*

**PLAINTIFFS' OPPOSITION TO
DEFENDANT RIVERSIDE'S
MOTION TO DISMISS**

Judge:     Wesley L. Hsu
Date:      December 15, 2023
Time:      1:30 PM
Courtroom: 9B

# TABLE OF CONTENTS

**I.   LEGAL STANDARD** ................................................................**5**

**II.  STATEMENT OF RELEVANT FACTS**.......................................**6**

**III. ARGUMENT** ........................................................................**8**

   A.  THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' STATE LAW CLAIMS ................................................................................8

     *i.    Failure to Establish That Service Was Actually Made in Compliance with California Government Code Section 915.2* ......................................9

     *ii.   Statute of Limitations Should Not Apply for Reasons of Equity* ...................9

   B.  PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR FAILURE TO SUMMON MEDICAL CARE PURSUANT TO CALIFORNIA GOVERNMENT CODE SECTION 845.6 ..............................................................................11

   C.  PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR NEGLIGENCE – MEDICAL MALPRACTICE ...............................................13

   D.  PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR NEGLIGENCE ...........................................................................15

   E.  PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR A VIOLATION OF THE BANE ACT ..................................................16

   F.  PLAINTIFFS STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR MUNICIPAL LIABILITY FOR FAILURE TO TRAIN, UNLAWFUL CUSTOM AND PRACTICE, AND RATIFICATION ..............................................17

**IV. CONCLUSION**.......................................................................**20**

PLAINTIFFS' OPPOSITION TO DEFENDANT RIVERSIDE'S MOTION TO DISMISS

1

## <u>TABLE OF AUTHORTIES</u>

2

3 **Cases**

*Addison v. State of California,*
4   *21 Cal. 3d 313 (1978)* .........................................................................................10

5 *Ashcroft v. Iqbal,*
  *556 U.S. 662 (2009)* ...........................................................................................6

6 *Balistreri v. Pacifica Police Dep't,*
  *901 F.2d 696 (9th Cir. 1988)* .............................................................................5

7 *Bell Atl. Corp. v. Twombly*,
8   *550 U.S. 544 (2007)* ...........................................................................................5

*Bollinger v. Nat'l Fire Ins. Co. of Hartford, Conn.*,
9   25 Cal. 2d 399 (1944) .........................................................................................10

10 *Brown v. Lynch,*
  831 F.3d 1146 (9th Cir. 2016) ............................................................................18

11 *Call v. Los Angeles Cnty. Gen. Hosp.*,
12   77 Cal. App. 3d 911 (Ct. App. 1978) ..................................................................9

*City of St. Louis v. Praprotnik*,
13   485 U.S. 112 (1988) ............................................................................................17

14 *Conley v. Gibson,*
  355 U.S. 41 (1957) ...............................................................................................5

15 *Conservation Force v. Salazar,*
16   646 F.3d 1240 (9th Cir. 2011) ..............................................................................5

*Creer v. Vallejo,*
17   No. 2:14-cv-1428 JAM DAD, 2015 WL 3795027 (E.D. Cal. June 17, 2015) ....18

18 *DeSoto v. Yellow Freight Sys., Inc.*,
19   957 F.2d 655 (9th Cir. 1992) ................................................................................6

Edgington v. Cnty. of San Diego,
20   118 Cal. App. 3d, 173 Cal. Rptr. 225 (Ct. App. 1981) .......................................11

21 *Edison v. United States*,
  822 F.3d 510 (9th Cir. 2016) ...............................................................................15

22 *Elias v. San Bernardino County Flood Control Dist.*,
23   68 Cal.App.3d 70 (1977) .....................................................................................11

*Empress, L.L.C. v. City & Cty. of San Francisco*,
24   419 F.3d 1052 (9th Cir. 2005) .............................................................................17

25 *Estate of Sanchez v. City of Stanislaus,*
  No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868, (E.D. Cal. Apr. 18, 2019)18

26 *Flores v. Natividad Medical Center (1987)* ...........................................................14

27

28

*Galvan v. City of Vacaville,*
No. 2:18-cv-279-KJM-CKD, 2018 WL 4214896, (E.D. Cal. Sept. 5, 2018) ......18
*Geraci v. Homestreet Bank,*
347 F.3d 749 (9th Cir. 2003) ...................................................................6
*Giraldo v. Dep't of Corr. & Rehab.,*
168 Cal. App. 4th (2008) ......................................................................15
*Gomez v. Vernon,*
255 F.3d 1118 (9th Cir. 2001) ...............................................................17
*Guevara v. City of Los Angeles,*
No. CV 14-08120 DDP, 2015 WL 224727 (C.D. Cal. Jan. 15, 2015)...............18
*Haines v. Brand,*
No. C-11-1335 EMC, 2011 WL 6014459 (N.D. Cal. Dec. 2, 2011) ..................18
*Halcomb v. City of Sacramento,*
No. 2:14-cv-02796 MCE-KJN, 2016 WL 3418357 (E.D. Cal. June 22, 2016)...18
*Hunter v. City of Sacramento,*
652 F.3d 1225 (9th Cir. 2011) ...............................................................17
*Jett v. Penner,*
439 F.3d 1091 (9th Cir. 2006) ...............................................................11
*Leatherman v. Tarrant Cty. Narcotics Intel. & Coord. Unit,*
507 U.S. 163 (1993) ............................................................................17
*Lucas v. City of Long Beach,*
60 Cal.App.3d 341 (1976) .....................................................................12
*McKay v. City of Hayward,*
949 F. Supp. 2d 971 (N.D. Cal. 2013).......................................................17
*Mitchell v. Twp. of Pemberton,*
No. CIV-09-810 (NLH) (AMD), 2010 WL 2540466, (D.N.J. June 17, 2010)....18
*Monell v. Dep't of Soc. Servs. of N.Y.,*
436 U.S. 658 (1978) ....................................................................... 17, 20
*Osuna v. Cty. Of Stanislaus,*
392 F.Supp.3d. 1162 (E.D. Cal., 2019) ....................................................18
*Oviatt v. Pearce,*
954 F.2d 1470 (9th Cir. 1992) ...............................................................17
*Page v. MiraCosta Community College Dist.,*
180 Cal.App.4th 471 (2009) ..................................................................10
*Pareto v. F.D.I.C.,*
139 F.3d 696 (9th Cir. 1998) ..................................................................6
*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986) ............................................................................18
*Reese v. County of Sacramento,*
888 F.3d 1030 (9th Cir. 2018) ...............................................................16

PLAINTIFFS' OPPOSITION TO DEFENDANT RIVERSIDE'S MOTION TO DISMISS

*Rosenfeld v. Talamantes*,
  No. CV 22-0497 DSF (EX), 2022 WL 14742763, (C.D. Cal. Aug. 10, 2022)....16
*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ..................................................................6
*Tortorella v. Castro*,
  140 Cal.App.4th 1(Cal.Ct.App.2006) ...................................................14
*United States v. Hempfling*,
  431 F.Supp.2d 1069 (E.D. Cal. 2006) ...................................................6
*United States v. Redwood City*,
  640 F.2d 963 (9th Cir. 1981) ..................................................................5
*United States v. Reese*,
  2 F.3d 870 (9th Cir. 1993) ....................................................................16
*Waggy v. Spokane Cty.*,
  594 F.3d 707 (9th Cir. 2010) ................................................................18
*Watson v. State of California*,
  21 Cal. App. 4th 836 (1993) .................................................................14
*Williamson v. Gen. Dynamics Corp.*,
  208 F.3d 1144 (9th Cir. 2000) ................................................................6

**Statutes**
42 U.S.C. § 1988 ......................................................................................20
Cal. Code Civ. P. § 377.30 ......................................................................13
Cal. Code Civ. P. § 1013a .........................................................................9
Cal. Gov't Code § 915.2 ........................................................................8, 9
Cal. Gov't Code § 815.2 ...........................................................................15
Cal. Gov't Code § 820 .............................................................................15

**Rules**
Fed. R. Civ. P. 8(a)(2) ...............................................................................5
Fed. R. Civ. P. 12(b)(6) ...........................................................................5, 6

PLAINTIFFS' OPPOSITION TO DEFENDANT RIVERSIDE'S MOTION TO DISMISS

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs opposed Defendant County of Riverside's Motion to Dismiss and request that it be denied in full. If the Court identifies any deficient claims, Plaintiffs request that the claims be dismissed *without prejudice* so that Plaintiffs can move to amend their complaint.

## I.    **LEGAL STANDARD**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is rare. Indeed, it is "only [in] the extraordinary case in which dismissal is proper" for failure to state a claim. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). A motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a pleading. Under this Rule, a district court properly dismisses a claim only if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (emphasis added). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. A plaintiff need only provide a short and plain statement showing that she is entitled to relief. Fed. R. Civ. Pro. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957). As described herein, dismissal here would be improper because Plaintiffs assert cognizable legal theories and provide sufficient facts to support those theories and put Defendants on notice of the claims.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a complaint should not be dismissed on such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) (quoting *Conley*, 355 U.S. at 45-46); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000); *see also United States v. Hempfling*, 431 F.Supp.2d 1069, 1075 (E.D. Cal. 2006) ("A Rule 12(b)(6) motion is disfavored and rarely granted.").

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the pleading, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The pleading must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Defendants' Motion to Dismiss seeks expert opinion by proposing an unreasonably high standard for pleadings that is counter to the law. In light of these important standards, it is clear that Plaintiffs have alleged sufficient facts to support the challenged claims.

Alternatively, where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## II.    STATEMENT OF RELEVANT FACTS

On or about August 24, 2022, Decedent was experiencing a mental health crisis or exhibiting bizarre behavior including extremely labored breathing and fidgeting mannerism. (ECF No. 18, First Amended Complaint ["FAC"] ¶ 22.) Defendants Lawrence and Does 1-2 arrived at 84054 Indio Springs Dr., Indio, California in response to call for a wellness check on the Decedent. Decedent's sister told Defendant Lawrence that the Decedent needed to be taken to a hospital.

Decedent was subsequently contacted by Defendants Lawrence and Does 1-2. The officers told the Decedent's sister some of the symptoms they observed including that Decedent's pupils were dilated and he was fidgeting. However, Defendants Lawrence and Does 1-2 did not call paramedics or otherwise provide medical treatment for the Decedent. FAC ¶ 23. Instead, they arrested the Decedent and transported him to John Benoit Detention Center. FAC ¶ 24.

When Decedent was transported to the Detention Center, he was experiencing a substance overdose and was in clear need of immediate medical intervention and treatment. FAC ¶ 27 However, Does 4-9 failed to adequately assess Decedent even though some of them were trained jail nurses and/or medical professionals. *Id*. On information and belief, Does 4-9 failed to place the Decedent in a "sobering cell" or a cell which would permit County employees to monitor him through video cameras, windows, microphones, or other means of surveillance. FAC ¶ 28. As a result of these failures, the Decedent was found unresponsive in a holding cell approximately nine hours after he was booked. He was then transported to a hospital where he was pronounced dead. FAC ¶ 29.

From the time the Decedent was booked at the Detention center and until his death, Does 4-9 were on notice that the Decedent was under the influence of an intoxicating substance to a life-threatening degree, given that the arresting officers recognized the symptoms such as dilated pupils, fidgeting movement, and that Decedent was arrested and booked on charges of public intoxication. FAC ¶ 30. By taking no adequate action, Does 4-9 denied the Decedent necessary medical care, resulting in his death. FAC ¶ 31.

### III.   ARGUMENT

#### A.   The Statute Of Limitations Does Not Bar Plaintiffs' State Law Claims

On February 20, 2023, Plaintiffs filed timely claims with the County and the City of Indio. Plaintiffs received a rejection from the City of Indio dated March 7, 2023, but Plaintiffs did not receive a rejection letter from the County. Plaintiffs' counsel calendared the deadline for filing the complaint as September 7, 2023, six months from the date of City of Indio's rejection.

The County claims that a County employee mailed the County's rejection notice to Plaintiffs on February 28, 2023. And thus, the County argues that Plaintiffs had to file their complaint six months later, on August 28, 2023. But Plaintiffs, having received no rejection letter from the County, knew nothing of the supposed August 28, 2023 deadline, and, as a result, Plaintiffs filed their complaint on September 7th, 2023 to meet the only deadline they knew about.

The County asks this court to dismiss all state law claims against it because Plaintiffs filed their complaint *just 10 days after a deadline of which Plaintiffs had no notice*. But such a harsh result is not required by the law. Plaintiffs request that the Court reject the County's argument and allow their claims to be tried on the merits for two reasons. First, the County has not proven service of their rejection letter as required by California Government Code Section 915.2. And second, even if they can prove service, the Court should, as a matter of equity, allow the matter to be tried on the merits because the County suffered no prejudice and the Plaintiffs pursued their claim diligently.

PLAINTIFFS' OPPOSITION TO DEFENDANT RIVERSIDE'S MOTION TO DISMISS

      i.      <u>Failure to Establish That Service Was Actually Made in Compliance with California Government Code Section 915.2</u>

Proof of service under Section 915.2 is made by complying with California Code of Civil Procedure Section 1013a, which enumerates four methods to prove service. The County has not complied with any of the enumerated methods.

Two of the four methods—Section 1013a(2) and (4)—are inapplicable here because they apply to attorneys and court clerks. The other two methods, 1013a(2) and (4), require an affidavit setting forth detailed description of steps undertaken to mail the rejection letter. The County has not filed such an affidavit. The County's attorney has made several statements regarding the mailing of the rejection letter, but such statements are hearsay.

Therefore, under Section 915.2 and Section 1013a, the County has not provided proof of service, and their statute of limitations argument fails on that basis alone.

Furthermore, if the County files an affidavit, that is not the end of the matter. Whether notice was deposited in the mail is a question of fact. *Call v. Los Angeles Cnty. Gen. Hosp.*, 77 Cal. App. 3d 911, 917, 143 Cal. Rptr. 845, 848 (Ct. App. 1978). Any affidavit that the County might submit should be weighed against the sworn statements submitted along with this opposition brief. Karen Slyapich is the paralegal at the Law Offices of Dale K. Galipo who is responsible for incoming mail and she has attested, under penalty of perjury, that no rejection letter was received.

      ii.     <u>Statute of Limitations Should Not Apply for Reasons of Equity</u>

But even if the County were able to comply with the requirements of Section 915.2 and Section 1013a, the County's statute of limitations argument should be rejected because it is not supported by a single citation to binding case law

PLAINTIFFS' OPPOSITION TO DEFENDANT RIVERSIDE'S MOTION TO DISMISS

requiring such a harsh remedy. Indeed, binding precedent pushes in the opposite direction.

In discussing the application of the procedures for initiating a lawsuit under the Tort Claims Act, the California Supreme Court states that "in special situations, the foregoing statutory procedure does not preclude application of the equitable tolling doctrine, the purpose of which is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Addison v. State of California*, 21 Cal. 3d 313, 316, 578 P.2d 941, 942 (1978). The California Supreme Court has noted its own power and inclination to "adapt rules of procedure to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits." *Bollinger v. Nat'l Fire Ins. Co. of Hartford, Conn.*, 25 Cal. 2d 399, 410, 154 P.2d 399, 405 (1944).

Applying general equitable principles here requires a "balancing of the injustice to the plaintiff occasioned by the bar of [their] claim against the effect upon the important public interest or policy expressed by the Tort Claims Act limitations statute." *Addison*, 21 Cal. 3d at 320–21, 578 P.2d at 945. The claim filing requirement of the Government Claims Act serves several purposes: (1) to provide the public entity with sufficient information to allow it to make a thorough investigation of the matter; (2) to facilitate settlement of meritorious claims; (3) to enable the public entity to engage in fiscal planning; and (4) to avoid similar liability in the future." *Page v. MiraCosta Community College Dist.*, 180 Cal.App.4th 471, 493, 102 Cal.Rptr.3d 902 (2009).

Here, none of the enumerated purposes would be frustrated by allowing this case to be tried on the merits. First, by filing their claim within six months of the incident, Plaintiffs provided timely notice to the County that contained sufficient information to allow it to make its investigation. Second, the County has worked with our law firm numerous times and knows that we are always willing to engage

PLAINTIFFS' OPPOSITION TO DEFENDANT RIVERSIDE'S MOTION TO DISMISS

in reasonable settlement discussions; the circumstances here had absolutely no effect on settlement negotiations in this case. Third, the 10 days that the County complains of now is simply not enough time to have any effect on the County's ability to engage in fiscal planning or avoid similar liability in the future.

On the other hand, barring Plaintiffs state law claims would be catastrophic to their attempt to pursue justice for the death of their son. While they would still have their federal claims against the County, those claims are harder to prove and are subject to the federal law doctrine of qualified immunity. Thus, applying the principle equity to this case, the Court should not dismiss Plaintiffs' state law claims based the Tort Claims Act statute of limitations. *See Edgington v. Cnty. of San Diego*, 118 Cal. App. 3d 39, 48–49, 173 Cal. Rptr. 225, 230 (Ct. App. 1981) (dissenting opinion arguing Tort Claims Act's statute of limitations should not bar slightly late complaints, arguing it should not "snare the unwary" when its purpose is met) (quoting *Elias v. San Bernardino County Flood Control Dist.*, 68 Cal.App.3d 70, 74, 135 Cal.Rptr. 621 (1977)).

For the reasons above, Plaintiffs request that the Court allow their state law claims to be tried on the merits.

**B.    Plaintiffs State A Claim Upon Which Relief Can Be Granted For Failure To Summon Medical Care Pursuant To California Government Code Section 845.6**

"In order to state a claim under [California Government Code Section 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006). Defendants' immunity claim under Government Code Section 855.6 is inapplicable because Plaintiffs can make a strong showing that Defendants "knew or should have known" that the Decedent was in need of immediate medical care.

Does 4-10 knew, or should have known, that the Decedent needed immediate medical care due to exhibiting signs of a substance overdose. Despite this, Does 4-10 failed to adequately assess the Decedent upon his arrival at John Benoit Detention Center and neglected to summon necessary medical attention.

When the Decedent was brought to the Detention Center, he was exhibiting clear signs of medical distress, including extremely labored breathing and fidgeting mannerisms. Moreover, the Decedent's sister had already informed the earlier responding officers of his need for medical attention. Despite having this information and observing the Decedent's disturbed behavior, Does 4-10 placed the Decedent in a standard holding cell without adequate monitoring, and did not provide immediate medical intervention or place him in a "sobering cell" for continuous monitoring.

These actions and omissions by the County and Does 4-10 directly contributed to the Decedent not receiving the urgent medical care he required, ultimately leading to his death. Therefore, Plaintiffs contend that this Court should not dismiss their claim for failure to summon medical attention.

The County's arguments to the contrary are not persuasive. They argue: (1) intoxication due to drugs does not impose a duty to summon immediate medical care; (2) the mere fact that Decedent was placed in a cell and found unresponsive nine hours later is insufficient to state a claim; and (3) medical professionals "saw" Decedent, so there can be no liability for failure to summon medical attention. (ECF 23 at 13–14.)

First, there is no exception to the duty to summon medical aid for situations involving drugs, and the case the County relies on says no such thing. *See Lucas v. City of Long Beach*, 60 Cal.App.3d 341 (addressing the duty to check in on a "moderately intoxicated person", *not* creating a broad exception to the duty to summon medical attention for inmate in need of immediate care).

Second, Plaintiffs are alleging much more than the "mere fact" that Decedent was left in his cell and found unresponsive nine hours later, as described in detail above.

Third, the duty to summon medical assistance did not disappear when Does 7-9 "saw" Decedent. Decedent was *seen*, not *treated*. The cases cited by the County on this point stand for the proposition that once medical treatment is being provided, the duty to summon medical care has been met. But here, no medical treatment was provided.

For all the reasons above, Plaintiffs request that this Court deny this portion of the County's Motion. However, if this Court finds that Plaintiffs have not properly pled this claim, Plaintiffs request an opportunity to amend this claim.

## C.      Plaintiffs State A Claim Upon Which Relief Can Be Granted For Negligence – Medical Malpractice

Defendants argument that Plaintiffs' lack standing to bring a survival suit is moot because, on November 21, 2023, Plaintiffs filed declarations satisfying the requirements of California Code of Civil Procedure 377.30. (ECF Nos. 27, 28.)

California law does not support the County's argument that it and its employees are immune from medical malpractice claims. (*See* Motion at 15-16) Section 845.6 clearly states: "Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6." And Section 844.6 states that "the public entity shall pay . . . any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or

settlement of a claim or action, based on such malpractice, to which the public entity has agreed. The clear meaning of the above statutes establish that Plaintiffs can sue based on a theory of medical malpractice, and case law confirms this conclusion. *See also Watson v. State of California*, 21 Cal. App. 4th 836, 842, 26 Cal. Rptr. 2d 262, 265 (1993); *Flores v. Natividad Medical Center* (1987) 192 Cal.App.3d 1106, 1115, 238 Cal.Rptr. 24.)

In a medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Tortorella v. Castro*, 140 Cal.App.4th 1, 3 n. 2, 43 Cal.Rptr.3d 853 (Cal.Ct.App.2006).

Here, Plaintiffs allege facts supporting each element of a medical malpractice claim. Corresponding with each element above, Plaintiffs allege: (1) Does 7-9 are nurses and medical professionals employed by the County with a duties to use medical skills, prudence, and diligence as other members of the profession commonly possess and exercise (FAC ¶ 105); (2) they breached their duties when they ignored Decedent's obvious serious symptoms of drug overdose and failed to recognize and appropriately treat Decedent's serious medical conditions (FAC ¶ 106); (3) their breach of duty proximately caused Decadent's injury (FAC ¶ 108); (4) Decedent died as a result of their malpractice (FAC ¶ 110).

For the reasons above, Plaintiffs request that the Court deny this portion of the County's Motion.

### D.    Plaintiffs State A Claim Upon Which Relief Can Be Granted For Negligence

Defendants argue that Plaintiffs' negligence claim should be dismissed because they have not alleged facts that "indicate a mandatory duty was imposed [the County]." This argument is baseless.

As discussed above, "[p]ublic employees are liable for injuries resulting from their acts or omissions to the same extent as private persons, except where otherwise exempted or immunized by law. Cal. Gov. Code § 820. Public entities are correspondingly liable for the negligent acts or omissions of their employees acting within the scope of their employment except where either the employee or the public entity is immunized from liability by statute. Cal. Gov. Code § 815.2.

The Ninth Circuit has held that California "imposes a heightened duty of care on jailers, due to prisoners' increased vulnerability while incarcerated." *Edison v. United States*, 822 F.3d 510, 521 (9th Cir. 2016). Under California law, there is a special relationship between prison employees and prisoner which gives rise to a duty to protect them from foreseeable harm. This duty has been discussed at great length by the California Court of Appeals, which has held:

> Prisoners are vulnerable. And dependent. Moreover, the relationship between them is protective by nature, such that the jailer has control over the prisoner, who is deprived of the normal opportunity to protect himself from harm inflicted by others. This, we conclude, is the epitome of a special relationship, imposing a duty of care on a jailer owed to a prisoner, and we today add California to the list of jurisdictions recognizing a special relationship between jailer and prisoner.

*Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 250–51, 85 Cal. Rptr. 3d 371, 386 (2008).

Here, Defendants owed Decedent a duty because he was in their custody. As explained above, Plaintiffs plausibly alleged the Defendants breached their duty to use reasonable care when they failed to provide Decedent with appropriate medical care and treatment despite his serious medical needs. As a result of the County's actions and omissions, Decedent died. Thus, Plaintiffs have adequately stated a claim for negligence and this portion of the County's Motion should be denied. See *Rosenfeld v. Talamantes*, No. CV 22-0497 DSF (EX), 2022 WL 14742763, at *7 (C.D. Cal. Aug. 10, 2022) (denying motion to dismiss negligence claim, finding that plaintiffs adequately alleged officers breached their duty to use reasonable care when they failed to provide prisoner with appropriate medical care and treatment despite his serious medical needs.)

### E.  Plaintiffs State A Claim Upon Which Relief Can Be Granted For a Violation of the Bane Act

The Ninth Circuit has recently stated that "reckless disregard" for a person's constitutional rights is evidence of a violation of the Bane Act. *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) (holding that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights") (quoting *United States v. Reese*, 2 F.3d 870 (9th Cir. 1993)). As set forth in detail above, Plaintiffs' complaint sets forth a number of facts that certainly establish that Defendants acted with reckless disregard for Decedent's constitutional rights. Given the obvious signs of severe medical crisis, Defendants showed no regard for Decedent's health and safety and took no actions to help prevent his death. Accordingly, Plaintiffs contend that this Court should not dismiss their claim for Violation of the Bane Act. If this Court finds that Plaintiffs have not properly pled this claim, then Plaintiffs request an opportunity to amend this claim.

**F.    Plaintiffs State A Claim Upon Which Relief Can Be Granted For Municipal Liability for Failure to Train, Unlawful Custom and Practice, and Ratification**

To establish *Monell* liability, Plaintiffs must prove only one of either: (1) an unconstitutional policy, practice or custom; (2) a failure to train, or (3) ratification of a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). In this case, Plaintiffs assert claims for under all three theories.

Taking the facts and all reasonable inferences in the light most favorable to Plaintiff, Defendant County is liable for unconstitutional custom, practice, and policy, failure to train, and ratification. The pleading standard is not heightened for municipal liability. *See Leatherman v. Tarrant Cty. Narcotics Intel. & Coord. Unit*, 507 U.S. 163, 167-68 (1993); *see also Empress, L.L.C. v. City & Cty. of San Francisco*, 419 F.3d 1052, 1055 (9th Cir. 2005).

<u>Policy and Custom</u>:

Municipal liability may be attached when an official commits a constitutional violation pursuant to a widespread practice or custom. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The Ninth Circuit has "long recognized that a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Hunter v. City of Sacramento*, 652 F.3d 1225, 1233-34, 1236 (9th Cir. 2011) (uninvestigated and unpunished); *McKay v. City of Hayward*, 949 F. Supp. 2d 971, 986 (N.D. Cal. 2013) ("'[T]he failure of an official to take any remedial steps after the violations' can indicate a deliberate choice and establish a basis for liability") (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (inaction); Ninth Cir. Model Jury Instruction 9.7 (same); *Brown v. Lynch*, 831 F.3d

1146, 1152 (9th Cir. 2016) (same); *Praprotnik*, 485 U.S. at 127 (same). "It is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see Waggy v. Spokane Cty.*, 594 F.3d 707, 713 (9th Cir. 2010) (noting that a policy can be one of action or inaction – through its omissions the municipality is responsible).

It is rare when a plaintiff has access to a precise policy or custom prior to engaging in discovery, and "requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork." *See Osuna v. Cty. Of Stanislaus*, 392 F.Supp.3d. 1162, 1174 (E.D. Cal., 2019); *Estate of Sanchez v. City of Stanislaus*, No. 1:18-cv-00977-DAD-BAM, 2019 WL 1745868, at *5 (E.D. Cal. Apr. 18, 2019); *Creer v. Vallejo*, No. 2:14-cv-1428 JAM DAD, 2015 WL 3795027, at *5 (E.D. Cal. June 17, 2015). District courts have repeatedly noted that details of an alleged custom or policy need not be pled as the parties can develop such topics by engaging in discovery, and that only minimal factual allegations are required at the motion to dismiss stage. *See Creer*, 2015 WL 3795027, at *5; *Guevara v. City of Los Angeles*, No. CV 14-08120 DDP, 2015 WL 224727, at *3 (C.D. Cal. Jan. 15, 2015); *Galvan v. City of Vacaville,* No. 2:18-cv-279-KJM-CKD, 2018 WL 4214896, at *5 (E.D. Cal. Sept. 5, 2018); *Halcomb v. City of Sacramento*, No. 2:14-cv-02796 MCE-KJN, 2016 WL 3418357, at *4 (E.D. Cal. June 22, 2016); *Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at *5 (N.D. Cal. Dec. 2, 2011); *Mitchell v. Twp. of Pemberton*, No. CIV-09-810 (NLH) (AMD), 2010 WL 2540466, at *6 (D.N.J. June 17, 2010).

Plaintiffs allege that the County has unconstitutional customs and policies that were the moving force behind the actions and inactions that caused Decedent's death. The allegations detail a systemic failure to staff the jail with sufficient medical personnel, and to provide or summon necessary medical treatment for

inmates with specific health conditions. This failure is not isolated but indicative of a broader, unconstitutional policy of neglecting inmates' medical needs. FAC ¶ 81 (a-b). Furthermore, the complaint alleges inhumane treatment of inmates, treating them as if their lives are of no consequence. This is compounded by a lack of adequate training for personnel in treating inmates humanely and addressing their medical needs. Such conduct not only violates basic human rights but also established constitutional protections. FAC ¶ 81 (c-d). The County is alleged to employ individuals known to neglect inmates' medical needs, and fail to discipline officers and staff for misconduct. This represents a custom of tolerating and potentially encouraging unconstitutional behavior within the jail system. FAC ¶ 81 (f-g). Lastly, the declaration that in-custody deaths and injuries are "within policy", even when these incidents are later adjudged unconstitutional, points to a deeply ingrained policy of excusing and legitimizing rights violations. FAC ¶ 81 (h).

Each of these allegations, taken individually and collectively, paints a picture of systemic and unconstitutional policies and customs implemented by the County and its agents. These are not mere allegations of isolated incidents but are indicative of a pattern of conduct that, if proven, would constitute a grave violation of constitutional rights.

Training: Plaintiffs allege that the County failed to provide adequate training to its employees, specifically in managing usual and recurring situations in the jail, such as ensuring timely and adequate medical attention for inmates and properly assessing their medical conditions. FAC ¶ 71. This inadequacy in training policies is claimed to be a result of the County's deliberate indifference to the obvious consequences, including neglecting the provision of medical care, failing to create a safe environment, and inadequately monitoring inmates exhibiting medical symptoms. FAC ¶ 72. This failure to train is alleged to have directly caused Decedent's death. FAC ¶ 73.

<u>Ratification</u>: Plaintiffs allege that the County and its policymakers ratified the unconstitutional actions of Defendants DOES 4-10, who acted under color of state law and within their scope of employment. FAC ¶ 88. This ratification includes the failure to discipline or retrain Defendants DOES 4-10, thereby perpetuating and sanctioning their denial of medical care to the Decedent, resulting in his injuries and death. FAC ¶ 91. Plaintiffs contend that this lack of action and explicit or implicit approval of the wrongful conduct demonstrates a reckless and callous disregard for the Decedent's constitutional rights, including his right to adequate medical care. FAC ¶ 92. Moreover, Plaintiffs point to a series of similar cases against the County, involving in-custody deaths and the denial of medical care, as evidence of a pattern of unconstitutional practices and policies by the County. FAC ¶ 93. This pattern, they argue, underscores the County's ratification of unjustified and unconstitutional in-custody deaths, leading to the Decedent's suffering and subsequent death, for which Plaintiffs seek damages and attorney's fees under 42 U.S.C. Section 1988. FAC ¶ 94.

Thus, Plaintiffs have stated *Monell* claims based on theories of unconstitutional custom, practice, and policy; failure to train; and ratification.

## IV.   CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request an order denying Defendant County of Riverside's Motion to Dismiss. If the Court identifies any deficient claims, Plaintiffs request that the claims be dismissed *without prejudice* so that Plaintiffs can move to amend their complaint.

Dated: November 22, 2023          LAW OFFICES OF DALE K. GALIPO

                                  /s/*Cooper Alison-Mayne*
                                  Dale K. Galipo
                                  Cooper Alison-Mayne
                                  *Attorneys for Plaintiffs*


## CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certify that this Opposition to Defendant Riverside's Motion to Dismiss contains 4,888 words, which complies with the word limit of L.R. 11-6.1.


Dated: November 22, 2023                    /s/*Cooper Alison-Mayne*
                                            Cooper Alison-Mayne
                                            Dale K. Galipo
                                            *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT RIVERSIDE'S MOTION TO DISMISS