**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (Bar No. 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333

**The Law Office of Bradley I. Kramer**
Bradley I. Kramer, Esq. (SBN 234351)
bkramer@biklaw.com
8840 Wilshire Blvd. Suite 350
Beverly Hills, California 90211-2606
Telephone: (310) 289-2600

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ROSA ZAZUETA; OCTAVIO
ZAZUETA, individually and as
successors-in-interest to OCTAVIO
ZAZUETA Jr., deceased;

                Plaintiffs,

   v.

COUNTY OF RIVERSIDE; CITY OF
INDIO; KYLE LAWRENCE; and
DOES 1-10,

                Defendants.

Case No.  5:23-cv-01825-WLH-SHK

*District Judge Wesley L. Hsu*
*Magistrate Judge Kewalramani*

**PLAINTIFFS' OPPOSITION TO
DEFENDANT RIVERSIDE'S
MOTION TO DISMISS**

Judge:     Wesley L. Hsu
Date:      February 23, 2024
Time:      1:30 PM
Courtroom: 9B

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**I.   LEGAL STANDARD** ..................................................................**5**

**II.  PROCEDURAL HISTORY** ........................................................**6**

**III. STATEMENT OF RELEVANT FACTS**......................................**7**

**IV. ARGUMENT** ............................................................................**8**

  A.  Plaintiffs State a *Monell* Claim Based on County's Failure to Train Its
      Employees...........................................................................**9**

  B.  Plaintiffs State a *Monell* Claim Based on County's Policies and Customs ..**12**

  C.  Plaintiffs State a *Monell* Claim Based County's Ratification of Employee
      Conduct.............................................................................**16**

**V.  CONCLUSION**.........................................................................**18**

PLAINTIFFS' OPPOSITION TO DEFENDANT RIVERSIDE'S MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................6

4

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988).................................................5

5

*Bass v. City of Fremont*,
  2013 WL 891090 (N.D. Cal. 2013)......................................14

6

*Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
  520 U.S. 397 (1997) ..............................................................9

7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................5

8

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007).................................................9

9

*Castro v. Cnty. of Los Angeles*,
  833 F.3d 1060 (9th Cir. 2016) (en banc).............................13

10

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) ............................................... 9, 10, 13

11

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1988) ............................................................13

12

*Clouthier v. Cnty. of Contra Costa*,
  591 F.3d 1232 (9th Cir. 2010)............................................17

13

*Conley v. Gibson*,
  355 U.S. 41 (1957) ................................................................5

14

*Connick v. Thompson*,
  563 U.S. 51 (2011) ................................................................9

15

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011)..............................................5

16

*DeSoto v. Yellow Freight Sys., Inc.*,
  957 F.2d 655 (9th Cir. 1992)................................................6

17

*Empress L.L.C. v. City & Cnty. Of San Francisco*,
  419 F.3d 1052 (9th Cir. 2005)..............................................9

18

*Estate of Osuna v. Cnty. Of Stanislaus*,
  392 F.Supp.3d. 1162 (E.D. Cal. 2019) ...............................14

19

*Fairley v. Luman*,
  281 F.3d 913 (9th Cir. 2002)................................................9

20

*Flores v. Cnty. of Los Angeles*,
  758 F.3d 1154 (9th Cir. 2014)..............................................9

21

22

23

24

25

26

27

28

*Galvan v. City of Vacaville*,
  2018 WL 4214896 (E.D. Cal. Sept. 5, 2018) .........................................14
*Garmon v. Cnty. of Los Angeles*,
  828 F.3d 837 (9th Cir. 2016) ..................................................................9
*Geraci v. Homestreet Bank*,
  347 F.3d 749 (9th Cir. 2003) ..................................................................6
*Gillette v. Delmore*,
  979 F.2d 1342 (9th Cir. 1992) ..............................................................17
*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001) ..............................................................17
*Guevara v. Cnty. of Los Angeles*,
  2015 WL 224727 (C.D. Cal. Jan. 15, 2015) ..........................................14
*Haines v. Brand*,
  2011 WL 6014459 (N.D. Cal. Dec. 2, 2011) .........................................14
*Halcomb v. City of Sacramento*,
  2016 WL 3418357 (E.D. Cal. June 22, 2016) ........................................14
*Hunter v. Cnty. of Sacramento*,
  652 F.3d 1225 (9th Cir. 2011) ..............................................................17
*Johnson v. Hawe*,
  388 F.3d 676 (9th Cir. 2004) ..................................................................9
*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
  507 U.S. 163 (1993) ...............................................................................9
*Long v. Cnty. of Los Angeles*,
  442 F.3d 1178 (9th Cir. 2006) ..........................................................9, 16
*Mackie v. Cnty. of Santa Cruz*,
  444 F.Supp.3d 1094 (N.D. Cal. 2020) ..................................................11
*McKay v. City of Hayward*,
  949 F. Supp. 2d 971 (N.D. Cal. 2013) ..................................................17
*Meehan v. Cnty. of Los Angeles*,
  856 F.2d 102 (9th Cir. 1988) ................................................................15
*Merritt v. Cnty. of Los Angeles*,
  875 F.2d 765 (9th Cir. 1989) ..................................................................9
*Miranda v. Clark Cnty., Nev.*,
  319 F.3d 465 (9th Cir. 2003) (en banc) ..................................................9
*Mitchell v. Twp. of Pemberton*,
  2010 WL 2540466 (D.N.J. June 17, 2010) ...........................................14
*Monell v. Dep't of Soc. Servs. Of N.Y.*,
  436 U.S. 658 (1978) ...............................................................................8
*Murnane v. Las Vegas Metro. Police Dep't*,
  2015 WL 1442262 (D. Nev. Mar. 30, 2015) .........................................17

3

*Navarro v. Block*,
  72 F.3d 712 (9th Cir. 1996) ................................................................. 13

*Oviatt v. Pearce*,
  954 F.2d 1470 (9th Cir. 1992) ............................................................ 8, 10

*Pareto v. F.D.I.C.*,
  139 F.3d 696 (9th Cir. 1998) ................................................................. 6

*Price v. Sery*,
  513 F.3d 962 (9th Cir. 2008) .................................................................. 9

*Rodriguez v. Cnty. of Los Angeles*,
  2021 WL 4434973 (C.D. Cal. May 24, 2021) ........................................ 14

*Sandoval v. Cnty. of San Diego*,
  985 F.3d 657 (9th Cir. 2021) ................................................................ 12

*See Brown v. Lynch*,
  831 F.3d 1146 (9th Cir. 2016). .............................................................. 13

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001). ................................................................. 6

*Starr v. Bacca*,
  652 F.3d 1202 (9th Cir. 2011)) .............................................................. 11

*Thompson v. Cnty. of Los Angeles*,
  885 F.2d 1439 (9th Cir. 1989) ............................................................... 13

*Trevino v. Gates*,
  99 F.3d 911 (9th Cir. 1996) ................................................................... 17

*Tsao v. Desert Palace, Inc.*,
  698 F.3d 1128 (9th Cir. 2012) ............................................................... 16

*United States v. Hempfling*,
  431 F.Supp.2d 1069 (E.D. Cal. 2006) ..................................................... 6

*United States v. Redwood City*,
  640 F.2d 963 (9th Cir. 1981) .................................................................. 5

*Vasquez v. Los Angeles Cnty.*,
  487 F.3d 1246 (9th Cir. 2007) ............................................................... 16

*Westwood v. Cnty. of San Bernardino*,
  2021 WL 9880873 (C.D. Cal. June 2, 2021) .......................................... 14

*Williamson v. Gen. Dynamics Corp.*,
  208 F.3d 1144 (9th Cir. 2000) ................................................................ 6

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs oppose Defendant County of Riverside's Motion to Dismiss Portions of Plaintiffs' Second Amended Complaint (ECF No. 48) and request that it be denied in full.

## I.   LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is rare. Indeed, it is "only [in] the extraordinary case in which dismissal is proper" for failure to state a claim. *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). A motion pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a pleading. Under this Rule, a district court properly dismisses a claim only if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. A plaintiff need only provide a short and plain statement showing that she is entitled to relief. Fed. R. Civ. Pro. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957). As described herein, dismissal here would be improper because Plaintiffs assert cognizable legal theories and provide sufficient facts to support those theories and put Defendants on notice of the claims.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a

complaint should not be dismissed on such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003) (quoting *Conley*, 355 U.S. at 45–46); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000); *see also United States v. Hempfling*, 431 F.Supp.2d 1069, 1075 (E.D. Cal. 2006) ("A Rule 12(b)(6) motion is disfavored and rarely granted.").

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the pleading, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The pleading must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Defendants' Motion to Dismiss seeks expert opinion by proposing an unreasonably high standard for pleadings that is counter to the law. In light of these important standards, it is clear that Plaintiffs have alleged sufficient facts to support the challenged claims.

Alternatively, where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## II.  PROCEDURAL HISTORY

On September 7, 2023, Plaintiffs filed their lawsuit with multiple claims against Officer Kyle Lawrence, the City of Indio, and Riverside County. (ECF No. 1.) The First Amended Complaint ("FAC") was filed on October 27, 2023. (ECF No. 18.) Riverside County moved to dismiss parts of the FAC on November 14, 2023, and on December 18, the Court dismissed some claims but ruled that Plaintiffs were permitted to amend their pleadings for their *Monell* claims. (ECF No. 40.) On January 8, 2024, Plaintiffs filed their Second Amended Complaint

("SAC"), which included additional allegations to support Claims 4–6 for municipal liability against the County. (ECF No. 43.) After a failed discussion on January 16, 2024, the County filed its Motion to Dismiss Portions of the SAC ("*Motion*") requesting that the Court dismiss claims 4–6. (ECF No. 48.) Plaintiffs now oppose County's *Motion*.

## III.   STATEMENT OF RELEVANT FACTS

On August 24, 2022, Decedent was experiencing a mental health crisis and a medical crisis due to methamphetamine toxicity. The Decedent exhibited bizarre behavior including extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion, hallucinations, and paranoia. SAC ¶ 22. There were also signs of rapid eye movement and symptoms of hyperthermia, such as excessive sweating. *Id*. These symptoms are indicative of severe methamphetamine intoxication, a condition that can lead to a life-threatening medical emergency. *Id*. Defendants Lawrence and Does 1–2 responded to a wellness check at 84054 Indio Springs Dr., Indio, CA. SAC ¶ 23. Upon arrival, they were informed by the Decedent's sister that Decedent needed hospitalization. *Id.* During their interaction, the officers observed the symptoms described above. *Id.* Defendants Lawrence and Does 1–2 did not call paramedics or otherwise provide medical treatment for the Decedent. Instead, they arrested him and transported him to John Benoit Detention Center. SAC ¶ 24.

From the time the Decedent was booked at the Detention center and until his death, Does 4–9 were on notice that the Decedent was suffering from severe methamphetamine toxicity, such as: labored breathing, fidgeting mannerisms, extreme agitation, confusion, hallucinations, paranoia, rapid eye movement, and hyperthermia. SAC ¶ 30. But DOES 4–9 did not provide or call for medical treatment for the Decedent. SAC ¶ 31. As a result of these failures, the Decedent was found unresponsive in a holding cell approximately nine hours after he was

booked. He was then transported to a hospital where he was pronounced dead. SAC ¶ 29, 33.

The action and inactions of Does 4–9 are part of a systemic issue stemming from the failure of the County to institute constitutionally sufficient policies and training to prevent incidents like this from occurring. The County's training program is deficient in covering crucial law enforcement duties for inmate custody, such as evaluating and responding to medical emergencies at intake, monitoring inmates with medical conditions, and handling medical emergencies. SAC ¶ 72. More specifically relevant here, the program lacks adequate training for staff to recognize severe drug toxicity symptoms, vital for preventing drug overdoses among inmates. SAC ¶ 73.

The County's failure to act in the face of its persistent failure to meet minimum constitutional standards of providing inmates with medical care has had dire consequences. In 2022, 18 individuals died while incarcerated in Riverside County jails, the highest number for the County in the last 15 years. SAC ¶ 88. The systemic nature of the issue is confirmed and highlighted by the fact on February 23, 2023, the California Attorney General announced that his office had launched an investigation into the County's policies and customs prompted by a significant and concerning rise in deaths due to drug overdoses in the County's jails. SAC ¶ 87.

## IV.  ARGUMENT

To establish *Monell* liability, Plaintiffs must prove only one of either: (1) an unconstitutional policy, practice or custom; (2) a failure to train, or (3) ratification of a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. Of N.Y.*, 436 U.S. 658, 691 (1978); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). In this case, Plaintiffs assert claims for under all three theories.

Taking the facts and all reasonable inferences in the light most favorable to Plaintiff, Defendant County is liable for unconstitutional custom, practice, and policy, failure to train, and ratification. The pleading standard *is not* heightened for municipal liability. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 167-68 (1993); *see also Empress L.L.C. v. City & Cnty. Of San Francisco*, 419 F.3d 1052, 1055 (9th Cir. 2005).

A.      **Plaintiffs State a *Monell* Claim Based on County's Failure to Train Its Employees**

A plaintiff may establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. See *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989); *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016); *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir. 2007); *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186-87 (9th Cir. 2006); *Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir. 2004); *Miranda v. Clark Cnty., Nev*., 319 F.3d 465, 471 (9th Cir. 2003) (en banc); *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) (per curiam); *see especially Bd. Of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409–10 (1997) (discussing limited scope of such a claim). Such a showing depends on three elements: (1) the training program must be inadequate "'in relation to the tasks the particular officers must perform'"; (2) the County officials must have been deliberately indifferent "'to the rights of persons with whom the [local officials] come into contact'"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the constitutional deprivation at issue." *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations omitted); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011).

As alleged, and particularized to the present case, County employees Does 4–9 are inadequately trained to handle the usual and recurring situations they must deal with, including recognizing severe drug toxicity symptoms, vital for preventing drug overdoses among inmates. SAC ¶ 73. The County's training program lacks comprehensive modules and guidelines on recognizing early and advanced signs of drug toxicity, such as altered mental status, respiratory distress, and cardiovascular abnormalities. *Id.* As a direct consequence of this educational gap, staff members, including Defendants Does 4–9, lacked the necessary knowledge and skills to identify and respond appropriately to the Decedent's exhibiting symptoms indicative of an impending drug overdose. *Id.*

Liability may also attach based on a policy of inaction that demonstrates deliberate indifference to constitutional rights: "a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v.* 954 F.2d at 1474 (citing *Harris*, 489 U.S. at 388); *see also* Ninth Cir. Model Jury Instruction 9.7 (for use where *Monell* liability "is based on a local governing body's policy of inaction, such as a failure to train its police officers"). Here, the County maintains this deficient training regime despite the fact that inmates in their custody die of drug overdoses on a consistent basis, year after year. The severity of the situation in County jails has led to an investigation by the California Attorney General due to a notable increase in drug overdose deaths. SAC 87. In 2022 alone, 18 individuals died while incarcerated, marking the highest number in 15 years. SAC ¶ 88. The Attorney General suspects that these deaths indicate a pattern of unconstitutional behavior, particularly regarding drug use and overdose management. SAC ¶ 89. This alarming trend, coupled with concerns from local officials, underscores the urgency for addressing these issues. Yet the County does nothing.

The above allegations not only adequately allege a deficient training policy, but adequately allege that the County has been on notice of the issue for years and has chosen to do nothing. This failure on the part of the County shows that the County was deliberately indifferent to the obvious consequences of their inadequate training policies.

In *Mackie*, the Court found that the operative complaint sufficiently pled a *Monell* claim against the defendants, indicating that it did "not simply recite the elements of a cause of action" and instead outlined "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Mackie v. Cnty. of Santa Cruz*, 444 F.Supp.3d 1094, 1113 (N.D. Cal. 2020) (quoting *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The *Mackie* complaint alleged that the named defendants "knew the substantial risk of harm caused by inadequate training and supervision, and consciously disregarded the danger by deliberately choosing not to take steps to prevent, or even diminish, the harmful consequences of these unlawful policies and practices." *Id*. These allegations amounted to more than a mere recitation of "elements of the cause of action," and instead pled facts relating to a specific policy. *Id*.

Plaintiffs' allegations are far more detailed that the allegations in *Mackey*; the County has clearly been given "fair notice" of the specific claim against them such that they can defend themselves against it. Thus, Plaintiff's allegation of failure to train should survive.

The County argues that because some of Does 4–9 were trained jail nurses or medical professionals, Does 4–9 could not have failed to call for medical assistance. *Motion* at 5. This argument misconstrues the allegations in the complaint and does not match the standard applied in a 14th amendment context. Plaintiffs allege that Decedent showed clear signs of severe methamphetamine toxicity but DOES 4–9, including the nurses, did not take reasonable available

measures to abate the risk that he would die of a drug overdose. The mere presence of a nurse does not meet the minimum standard of care under the 14th amendment. In *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 680 (9th Cir. 2021), an inmate was sweating profusely and disoriented. The nurse on staff only performed a cursory 10-second blood test and did not provide adequate medical care to the inmate. The inmate subsequently died of a methamphetamine overdose. The Ninth Circuit held that "[the nurse] made essentially no effort to determine why [the decedent] was suffering the symptoms reported by [a deputy on the scene], nor did he attempt to treat those symptoms. He then abandoned [the decedent] for the remaining six hours of his shift and failed to pass along any information to the nurses who relieved him. On these facts, [the nurse] is not entitled to qualified immunity." *Sandoval*, 985 F.3d at 680–81.

The County also argues that certain allegations in the SAC are inconsistent with the FAC. *Motion* at 5–6. This argument also misses the mark. Plaintiffs alleged in their FAC that County nurses ignored Decedent's condition and failed to take the reasonable and necessary step of initiating his transportation to a hospital. In the SAC, Plaintiffs allege that the Does, including nurses, failed to call for medical assistance. These are consistent because both allegations center on the Does failure to provide or call for the medical care which was necessary to prevent Decedent's death.

For all the reasons about, Plaintiffs failure-to-train claim should survive the County's motion to dismiss.

## B. Plaintiffs State a *Monell* Claim Based on County's Policies and Customs

In their SAC, Plaintiffs sufficiently state a claim that gives the County fair notice to defend and taken as true plausibly suggests entitlement to relief for their unconstitutional custom, practice, or policy. "In order to establish municipal

1  liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's
2  injury." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en
3  banc) (quoting *Monell* 436 U.S. at 694.) "The [Supreme] Court has further required
4  that the plaintiff demonstrate that the policy or custom of a municipality 'reflects
5  deliberate indifference to the constitutional rights of its inhabitants.'" *Castro*, 833
6  F.3d at 1073 (quoting *Harris*, 489 U.S. at 392). The deliberate indifference
7  standard for municipal liability under §1983 is an objective inquiry. *Castro*, 833
8  F.3d at 1076. Moreover, a policy of inaction may be a municipal policy within the
9  meaning of *Monell. See Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016).
10 Even if there is not an explicit policy, a plaintiff may establish municipal liability
11 upon a showing that there is a permanent and well-settled practice by the
12 municipality which gave rise to the alleged constitutional violation. *See City of St.*
13 *Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Navarro v. Block*, 72 F.3d 712,
14 714–15 (9th Cir. 1996); *Thompson v. Cnty. of Los Angeles*, 885 F.2d 1439, 1444
15 (9th Cir. 1989), overruled on other grounds by *Bull v. City & Cnty. of San*
16 *Francisco*, 595 F.3d 964 (9th Cir. 2010).
17      Plaintiff's Fourth Claim as currently pled in the Complaint asserts eight (8)
18 categories of specific municipal customs, policies, and/or practices, as well as
19 referencing six (6) other failure to provide medical care civil rights cases filed
20 against the County to support a showing of these customs and practices. SAC ¶¶
21 83(a)–(h), 98(a)–(f). These customs, policies, and/or practices clearly are directly
22 tethered to the facts of this case and put the County on fair notice of their
23 unconstitutional policies. The aggregate of the policies, practices, and customs in
24 the SAC directly led to the incidents here such as (1) the inadequate screening at
25 intake which allowed a severely imperiled individual on the brink of death to be
26 checked into a cell instead of checked into a hospital, and (2) the failure to
27 recognize the symptoms of extreme methamphetamine toxicity. These County
28

policies, practices, and customs are unconstitutional and are the moving force

behind Does 4–9's failure to provide Decedent with necessary medical care.

It is rare when a plaintiff has access to a precise policy or custom prior to

engaging in discovery, and "requiring a plaintiff to plead its existence in detail is

likely to be no more than an exercise in educated guesswork." *See Estate of Osuna*

*v. Cnty. Of Stanislaus*, 392 F.Supp.3d. 1162, 1174 (E.D. Cal. 2019); *Westwood v.*

*Cnty. of San Bernardino*, No. EDCV21117JGBKKX, 2021 WL 9880873, at *7

(C.D. Cal. June 2, 2021); *Rodriguez v. Cnty. of Los Angeles*, No.

CV2010671FMOJEMX, 2021 WL 4434973, at *1 (C.D. Cal. May 24, 2021).

District courts have repeatedly noted that details of an alleged custom or policy

need not be pled as the parties can develop such topics by engaging in discovery,

and that only minimal factual allegations are required at the motion to dismiss

stage. *See Guevara v. Cnty. of Los Angeles*, No. CV 14-08120 DDP (MANx), 2015

WL 224727, at *3 (C.D. Cal. Jan. 15, 2015); *Galvan v. City of Vacaville*, No. 2:18-

cv-279-KJM-CKD, 2018 WL 4214896, at *5 (E.D. Cal. Sept. 5, 2018); *Halcomb v.*

*City of Sacramento*, No. 2:14-cv-02796 MCE-KJN, 2016 WL 3418357, at *4 (E.D.

Cal. June 22, 2016); *Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at

*5 (N.D. Cal. Dec. 2, 2011); *Mitchell v. Twp. of Pemberton*, No. CIV.09-810

(NLH) (AMD), 2010 WL 2540466, at *6 (D.N.J. June 17, 2010) ("[I]nformation

concerning a town's customs or policies, the policymakers' motivations behind

such policies, or the facts surrounding police department customs, are typically

unavailable to an outsider.").

Thus, although factual allegations of the complaint must plausibly allege the

existence of a policy or custom that was the moving force behind the constitutional

violation at issue, the policy or custom itself need only be alleged in general terms.

*See Bass v. City of Fremont*, No. C12-4943-TEH, 2013 WL 891090, at *4 (N.D.

Cal. 2013) (allegations that officers "engaged in a pattern and practice of using

unnecessary and excessive force and falsely reporting crimes, and that the municipal entities demonstrated deliberate indifference to this pattern and practice of constitutional violations" found to be "plausible and…sufficient to give the municipal entities notice of the specific policies, customs, and practices that are alleged to have caused the deprivation of Bass's rights.").

Plaintiff's allegations are more than general and provide fair notice because they include the following. First, Plaintiff alleges several past similar instances of misconduct to others. SAC ¶ 98 (a-f). The cases share key similarities with this case: they involve a failure to assess when an inmate is showing signs of suffering from life-threatening medical issues and failure to promptly and effectively provide medical treatment to inmates who are suffering life threatening medical issues. These cases demonstrate repeated constitutional violations by County custodial staff and nurses for failure to provide medical care, and upon information and belief, none of the deputies or nurses were disciplined or retrained as a result of their conduct. *See Meehan v. Cnty. of Los Angeles*, 856 F.2d 102 (9th Cir. 1988).

Plaintiffs also maintain allegations from the FAC detailing the County's consistent and systemic failure to staff the jail with sufficient medical personnel, and to provide or summon necessary medical treatment for inmates with specific health conditions. This failure is not isolated but indicative of a broader, unconstitutional policy of neglecting inmates' medical needs. The severity of the situation in Riverside County jails has led to an investigation by the California Attorney General due to a notable increase in drug overdose deaths. SAC ¶ 87. In 2022 alone, 18 individuals died while incarcerated, marking the highest number in 15 years. SAC ¶ 88. The Attorney General suspects that these deaths indicate a pattern of unconstitutional behavior, particularly regarding drug use and overdose management. ¶ 89.

The County argues that the allegations in the SAC regarding the recent rise of drug overdose deaths in the Riverside County jail system are irrelevant to the policies and customs at issue in this case. *Motion* at 7. But viewing the complaint in the light most favorable to the Plaintiffs, that is not the case. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). The County's argument hinges completely on their assertion that the issue with drug overdoses in their jails is specifically about drugs being smuggled into the jails. But that assertion is not supported by the allegations in the complaint and therefore that argument is not properly asserted on a motion to dismiss. Viewing the facts alleged in the light most favorable to the Plaintiffs, the persistent issue of inmates dying of drug overdoses in County facilities shows that the County's policies fail to provide adequate procedures for identifying inmates suffering from symptoms of severe drug toxicity and fail to provide adequate policies regarding the medical treatment of inmates who suffer a drug overdose.

When viewed in the light most favorable to Plaintiffs, as required by *Vasquez* 487 F.3d at 1249, there are enough factual allegations in the complaint to plead a sufficient *Monell* claim for unconstitutional custom, practice, or policy. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012); *see also Long*, 442 F.3d at 1185 (an unconstitutional policy "can be one of action or inaction."). And but for the County's deficient customs and policies, Decedent would have received the medical treatment he required. Thus, Plaintiffs' have sufficiently alleged a policy-and-custom claim.

## C. Plaintiffs State a *Monell* Claim Based County's Ratification of Employee Conduct

Ratification of the decisions of a subordinate by an official with final decision-making authority can also be a policy for purposes of municipal liability under §1983. *See Praprotnik*, 485 U.S. at, 127; *Trevino v. Gates*, 99 F.3d 911,

920–21 (9th Cir. 1996); *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Even a single instance of alleged unconstitutional conduct may be sufficient to demonstrate ratification of a subordinate's acts where there is a deliberate choice from among various alternatives to follow a particular course of action. *See Gillette*, 979 F.2d at 1347–48. Further, the Ninth Circuit has "long recognized that a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233–34 (9th Cir. 2011). "[T]he Ninth Circuit described inadequate discipline as a form of ratification by an official with final policymaking authority—by failing to discipline an officer, an official may ratify the officer's unconstitutional conduct." *Murnane v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-01088-MMD, 2015 WL 1442262, at *3 (D. Nev. Mar. 30, 2015) (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010)); *McKay v. City of Hayward*, 949 F. Supp. 2d 971, 986 (N.D. Cal. 2013) ("'[T]he failure of an official to take any remedial steps after the violations' can indicate a deliberate choice and establish a basis for liability.") (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)).

Plaintiffs allege that the County and its policymakers did not discipline, reprimand, retrain, suspend, or otherwise penalize Does 4–9. SAC ¶¶ 104, 106. This failure effectively ratified Does 4–9's actions, perpetuating and sanctioning their denial of medical care to the Decedent, resulting in his injuries and death. SAC ¶ 106–7.

Drawing all inferences in Plaintiffs' favor, the Complaint sufficiently alleges that the Defendant County, through its final policy makers, ratified the unconstitutional conduct in this case. Plaintiff should therefore be allowed to proceed to discovery to determine further information regarding the ratification of this incident as well as other use of excessive force incidents.

## V.   CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request an order denying Defendant County of Riverside's Motion to Dismiss Portions of the Second Amended Complaint. If the Court identifies any deficient claims, Plaintiffs request that the claims be dismissed *without prejudice* so that Plaintiffs can move to amend their complaint.

Dated: February 2, 2024          LAW OFFICES OF DALE K. GALIPO

                                 /s/*Cooper Alison-Mayne*
                                 Dale K. Galipo
                                 Cooper Alison-Mayne
                                 *Attorneys for Plaintiffs*

## CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Defendant Jeffree McKee, certify that this Motion to Dismiss Plaintiffs' First Amended Complaint contains 4,240 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 2, 2024          /s/*Cooper Alison-Mayne*
                                 Cooper Alison-Mayne
                                 *Attorneys for Plaintiffs*