**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (Bar No. 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333

**THE LAW OFFICE OF BRADLEY I. KRAMER**
Bradley I. Kramer, Esq. (SBN 234351)
bkramer@biklaw.com
8840 Wilshire Blvd. Suite 350
Beverly Hills, California 90211-2606
Telephone: (310) 289-2600

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

ROSA ZAZUETA~~;~~ OCTAVIO
ZAZUETA, individually and as
successors-in-interest to OCTAVIO
ZAZUETA Jr., deceased;

               Plaintiffs,

        vs.

COUNTY OF RIVERSIDE; CITY
OF INDIO; KYLE LAWRENCE;
JERON JUSTICE; PETER
FUENTES; CARSON~~C.~~ VENTURA;
~~MOORE~~TAYLOR SMITH; MARK
HERMOSILLA; LUIS
~~MONTES~~MONTEZ AVILA;
ALLYSON TOVAR; JUAN
VIRAMONTES; LAWRENCE
PONCE; ~~RN~~YURI LOPEZ,
~~RN~~ALEJANDRO VELAZQUEZ,
DOE 9; and CHAD
BIANCO~~COUNTY OF RIVERSIDE;~~
~~CITY OF INDIO; KYLE~~
~~LAWRENCE; and DOES 1–10~~,
inclusive,

Case No. 5:23-cv-1825-WLH-SHK

~~SECOND~~ **THIRD AMENDED
COMPLAINT**

1. Fourth Amendment- Denial of Medical
   Care (42 U.S.C. § 1983)
2. Fourteenth Amendment—Denial of
   Medical Care (42 U.S.C. § 1983)
3. Fourteenth Amendment—Substantive
   Due Process (42 U.S.C. § 1983)
4. Municipal Liability –Failure to Train (42
   U.S.C. § 1983)
5. Municipal Liability –Unconstitutional
   Custom, Practice, or Policy (42 U.S.C.
   § 1983)
6. Municipal Liability—Ratification (42
   U.S.C. § 1983)
7. Negligence (Survival and Wrongful
   Death)
8. Violation of Cal. Civil Code § 52.1

**DEMAND FOR JURY TRIAL**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants.

1  **COMPLAINT FOR DAMAGES**

2      Come now Plaintiffs ROSA ZAZUETA and OCTAVIO ZAZUETA,

3  individually and as successors-in-interest to Octavio Zazueta Jr., deceased,; for

4  their ~~Amended~~ Third Amended Complaint against Defendants COUNTY OF

5  RIVERSIDE;, CITY OF INDIO;, KYLE LAWRENCE;, JERON JUSTICE,

6  PETER FUENTES, ~~C.~~CARSON VENTURA, ~~MOORE~~TAYLOR SMITH, MARK

7  HERMOSILLA, LUIS ~~MONTES~~MONTEZ AVILA, ALLYSON TOVAR, JUAN

8  VIRAMONTES, LAWRENCE PONCE,~~and DOES 1–10, inclusive,~~ ~~RN~~YURI

9  LOPEZ, ~~RN~~ALEJANDRO VELAZQUEZ, DOE 9, and CHAD BIANCO,

10  alleg~~e~~ing as follows:

11  **JURISDICTION AND VENUE**

12      1.    This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and

13  1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United

14  States including 42 U.S.C. §1983 and the Fourteenth Amendment of the United

15  States Constitution. This Court has supplemental jurisdiction over Plaintiffs'

16  claims arising under state law pursuant to 28 U.S.C. §1367(a) because those claims

17  are so related to the federal claims that they form part of the same case or

18  controversy under Article III of the United States Constitution.

19      2.    Venue is proper in this Court under 28 U.S.C. §1391(b) because the

20  parties reside in, and all incidents, events, and occurrences giving rise to this action

21  occurred in the County of Riverside, California.

22  **INTRODUCTION**

23      3.    This civil rights and state tort action seeks compensatory and punitive

24  damages from Defendants for violating various rights under the United States

25  Constitution and state law in connection with the in-custody death of Plaintiffs'

26  son, Octavio Zazueta Jr. on August 26, 2022, and the repeated denial of medical

27  care to him starting on or about 12 a.m., ~~August 2~~4~~5~~, 2022.

28

-2-

**PARTIES**

1

4. At all relevant times, Decedent Octavio Zazueta Jr. ("DECEDENT")

was an individual residing in the County of Riverside, California.

5. Plaintiff Rosa Zazueta is an individual residing in the City of

Coachella, County of Riverside, California. Rosa Zazueta is the natural mother of

DECEDENT and sues in her individual capacity and as successor-in-interest to

DECEDENT. Rosa Zazueta seeks survival damages, wrongful death damages,

compensatory damages and punitive damages under federal and state law.

6. Plaintiff Octavio Zazueta is an individual residing in the County of

Riverside, California. Octavio Zazueta is the natural father of DECEDENT and

sues in his individual capacity and as successor-in-interest to DECEDENT.

Octavio Zazueta seeks survival damages, wrongful death damages, compensatory

damages, and punitive damages under federal and state law.

7. At all relevant times, Defendant CITY OF INDIO ("CITY") is and

was a duly organized public entity existing under the laws of the State of

California. CITY is and was responsible for the actions, omissions, policies,

procedures, practices and customs of its various agents and agencies, including the

Indio Police Department ("IPD") and its agents and employees. At all relevant

times, Defendant CITY is and was responsible for the management and overseeing

of the IPD, for the actions or inactions of ~~D the d~~efendant~~s~~ KYLE LAWRENCE,

JERON JUSTICE, and PETER FUENTES (collectively, "DEFENDANT

OFFICERS")~~KYLE LAWRENCE and DOES 1–3~~. At all relevant times, CITY

was the employer of DEFENDANT OFFICERS~~Defendants KYLE LAWRENCE~~

~~and DOES 1–3~~.

8. At all relevant times, Defendant COUNTY OF RIVERSIDE

("COUNTY") is and was a duly organized public entity existing under the laws of

the State of California. COUNTY is and was responsible for the actions,

-3-

1  omissions, policies, procedures, practices and customs of its various agents and
2  agencies, including the Riverside County Sheriff's Office ("RCSO") and its agents
3  and employees. At all relevant times, Defendant COUNTY is and was responsible
4  for the management and overseeing of the RCSO, for the actions or inactions of
5  CARSONC. VENTURA, MOORETAYLOR SMITH, MARK HERMOSILLA,
6  LUIS MONTESMONTEZ AVILA, ALLYSON TOVAR, JUAN VIRAMONTES,
7  LAWRENCE PONCE DOES 4–10("DEFENDANT DEPUTIES"), RNYURI
8  LOPEZ, RNALEJANDRO VELAZQUEZ, DOE 9, and9 ("DEFENDANT
9  NURSES"),, and Sheriff CHAD BIANCO. The COUNTY is also responsible for
10  the policies, practices, and/or customs relating to the COUNTY and its deputies
11  and employees. At all relevant times, COUNTY was the employer of
12  DEFENDANT DEPUTIES, DEFENDANT NURSES, and Sheriff CHAD
13  BIANCODOES 4–10.
14       9.     At all relevant times, DEFENDANT OFFICERSDefendant KYLE
15  LAWRENCE ("LAWRENCE") and DOES 1–2 were duly appointed by CITY as
16  IPD officers and employees or agents of CITY, subject to oversight and
17  supervision by CITY's elected and non-elected officials. DEFENDANT
18  OFFICERS LAWRENCE, and DOES 1–2 acted under color of law within the
19  course and scope of their duties as officers for the IPD. At all relevant times,
20  DEFENDANT OFFICERSLAWRENCE and DOES 1–2 were acting within the
21  complete authority and ratification of their principal, Defendant CITY.
22       10.    At all relevant times, Defendant DOE 3 is a managerial, supervisorial,
23  and policymaking employee of the CITY, who was acting under color of law
24  within the course and scope of their duties as a managerial, supervisorial, and
25  policymaking employee for the IPD and the CITY. DOE 3 was acting with the
26  complete authority and ratification of their principal, Defendant CITY.
27
28

1   11.10.At all relevant times, DEFENDANT DEPUTIES and DEFENDANT

2   NURSES Defendant DOES 4-9, inclusive, were duly appointed by COUNTY as

3   RCSO deputies or nurses and employees or agents of COUNTY, subject to

4   oversight and supervision by COUNTY's elected and non-elected officials.

5   DEFENDANT DEPUTIES and NURSES DOES 4-9 acted under color of law and

6   within the course and scope of their duties as officers and medical employees (such

7   as jail nurses and/or other jail medical professionals) for the COUNTY. At all

8   relevant times, DOES 4-9DEFENDANT DEPUTIES were acting within the

9   complete authority and ratification of their principal, Defendant COUNTY.

10   12.11.At all relevant times, Defendant DOE 10Sheriff CHAD BIANCO is a

11   managerial, supervisorial, and policymaking employee of the COUNTY, who was

12   acting under color of law within the course and scope of their duties as a

13   managerial, supervisorial, and policymaking employee for the COUNTY. DOE

14   10Sheriff CHAD BIANCO was acting with the complete authority and ratification

15   of their principal, Defendant COUNTY.

16   13.12.In doing the acts and failing and omitting to act as hereinafter

17   described, DEFENDANT OFFICERS LAWRENCE and DOES 1-3 were acting

18   on the implied and actual permission and consent of Defendant CITY.

19   14.13.In doing the acts and failing and omitting to act as hereinafter

20   described, DOES 4-10DEFENDANT DEPUTIES,

21   RNYURIALEJANDRODEFENDANT NURSES, and CHAD BIANCO were

22   acting on the implied and actual permission and consent of Defendant COUNTY.

23   15.14.On information and belief, DEFENDANT OFFICERS,

24   DEFENDANT DEPUTIES, RNYURIALEJANDRODEFENDANT NURSES, and

25   CHAD BIANCOLAWRENCE and DOES 1-10 are residents of the County of

26   Riverside.

27

28

1    ~~16.~~15. DEFENDANT OFFICERS, DEFENDANT DEPUTIES,
2    ~~RN YURI~~ALEJANDRO DEFENDANT NURSES, and CHAD BIANCO
3    ~~LAWRENCE and DOES 1–10~~ are sued in their individual capacities.
4        ~~17.     The true names and capacities of DOES 1–10 are unknown to~~
5    ~~Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs~~
6    ~~will seek leave to amend this Complaint to show the true names and capacities of~~
7    ~~the Defendants when they have been ascertained. Each of the fictitiously named~~
8    ~~Defendants is responsible in some manner for the conduct or liabilities alleged~~
9    ~~herein.~~
10       ~~18.~~16. At all times mentioned herein, each and every defendant was the agent
11   of each and every other defendant and had the legal duty to oversee and supervise
12   the hiring, conduct, and employment of each and every defendant.
13       ~~19.~~17. All of the acts complained of herein by Plaintiffs against Defendants
14   were done and performed by said Defendants by and through their authorized
15   agents, servants, and/or employees, all of whom at all relevant times herein were
16   acting within the course, purpose, and scope of said agency, service, and/or
17   employment capacity. Moreover, Defendants and their agents ratified all of the acts
18   complained of herein.
19       ~~20.~~18. On or about February 20, 2023 Plaintiffs filed comprehensive and
20   timely claims for damages with the CITY and COUNTY pursuant to the applicable
21   sections of the California Government Code. Said claims were rejected by CITY
22   on March 7, 2023. Plaintiffs filed this lawsuit on September 7, 2023.
23                    **FACTS COMMON TO ALL CLAIMS FOR RELIEF**
24       ~~21.~~19. Plaintiffs repeat and re-allege each and every allegation in the
25   foregoing paragraphs of this Complaint with the same force and effect as if fully
26   set forth herein.
27
28

-6-

1   22. 20. On August 24, 2022, DECEDENT was experiencing a mental health

2   crisis and a medical crisis due to methamphetamine toxicity. The DECEDENT

3   exhibited bizarre behavior including extremely labored breathing, fidgeting

4   mannerisms, extreme agitation, confusion, hallucinations, and paranoia. There

5   were also signs of rapid eye movement and symptoms of hyperthermia, such as

6   excessive sweating. These symptoms are indicative of severe methamphetamine

7   intoxication, a condition that can lead to a life-threatening medical emergency.

8   23. 21. DEFENDANT OFFICERS LAWRENCE and DOES 1–2 arrived at

9   84054 Indio Springs Dr., Indio, California for a wellness check call on the

10  DECEDENT. At this location, DECEDENT's sister told DEFENDANT

11  OFFICERS LAWRENCE that the DECEDENT was in "bad shape" and needed to

12  be taken to a hospital. DECEDENT was subsequently contacted by DEFENDANT

13  OFFICERSLAWRENCE and DOES 1–2, who . LAWRENCE and DOES 1–2 then

14  told the DECEDENT's sister some of the symptoms they observed DECEDENT

15  including exhibiting symptoms of extreme methamphetamine toxicity, including

16  extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion,

17  rapid eye movement, and symptoms of hyperthermia, such as excessive

18  sweatingthat DECEDENT's pupils were dilated and he was fidgeting. However,

19  DEFENDANT OFFICERSon information and belief, LAWRENCE and DOES 1–

20  2 did not call paramedics or otherwise issue medical treatment for the

21  DECEDENT.

22  24. 22. DEFENDANT OFFICERS LAWRENCE and DOES 1–2 did not

23  properly assess the DECEDENT to determine if he needed immediate medical

24  attention. Defendants LAWRENCE and DOES 1–2JUSTICE arrested the

25  DECEDENT and transported him to John Benoit Detention Center instead of a

26  nearby hospital.

27

28

25.23. On information and belief, LAWRENCE and DOES 1–2Defendants LAWRENCE and JUSTICE did not adequately communicate to COUNTY employees at the Detention Center as to DECEDENT's condition and immediate need for medical attention.

26.24. LAWRENCE and DOES 1–2DEFENDANT OFFICERS's failure to properly assess DECEDENT for medical treatment, failure to determine that he needed medical attention, and failure to communicate his condition to County COUNTY employees at the Detention Center contributed to and resulted in DECEDENT not receiving the immediate medical attention he needed.

27.25. On information and belief, when DECEDENT was transported to the Detention Center, DECEDENT was experiencing a severe substance overdose and was in clear need of immediate medical intervention and treatment. However, DOES 4–9DEFENDANT DEPUTIES failed to adequately assess DECEDENT even though DOE 9 some of them werewas a trained jail nurses and/or medical professionals.

28.26. DOES 4–9DEFENDANT DEPUTIES failed to call for medical assistance even though they could see that DECEDENT was suffering from severe symptoms of methamphetamine intoxication which they knew meant he was at extremely high risk of suffering a fatal drug overdose.

29.27. As a result of the foregoing failures, the DECEDENT was found unresponsive in his cell approximately nine hours after he was booked. He was then transported to a hospital where he was pronounced dead.

30.28. From the time the DECEDENT was booked at the Detention center and until his death, DOES 4–9DEFENDANT DEPUTIES were on notice that the DECEDENT was under the influence of an intoxicating substance to a life-threatening degree, given that DECEDENT displayed clear symptoms of severe methamphetamine toxicity, such as: labored breathing, fidgeting mannerisms,

1   extreme agitation, confusion, hallucinations, and paranoia, rapid eye movement,

2   and hyperthermia.

3   ~~31.~~29. By taking no measures to care for DECEDENT while he suffered

4   from severe methamphetamine toxicity, ~~DOES 4–9~~ DEFENDANT DEPUTIES at

5   the John Benoit Detention Center denied the DECEDENT necessary medical care,

6   resulting in his unnecessary death.

7   ~~32.~~30. At all relevant times, the involved COUNTY employees, including

8   deputies, jail staff, and medical personnel were acting under color of state law and

9   in the course and scope of their employment with the COUNTY.

10   ~~33.~~31. As a result of their actions and inactions, the DECEDENT

11   experienced pain and suffering, and loss of life.

12   ~~34.~~32. Plaintiff ROSA ZAZUETA is DECEDENT's successor-in-interest as

13   defined in Section 377.11 of the California Code of Civil Procedure and succeeds

14   to DECEDENT's interest in this action as the natural mother of DECEDENT.

15   ~~35.~~33. Plaintiff OCTAVIO ZAZUETA is DECEDENT's successor-in-

16   interest as defined in Section 377.11 of the California Code of Civil Procedure and

17   succeeds to DECEDENT's interest in this action as the natural father of

18   DECEDENT.

19   <center>**FIRST CLAIM FOR RELIEF**</center>

20   <center>**Fourth Amendment —Denial of Medical Care (42 U.S.C. § 1983)**</center>

21   (All Plaintiffs against ~~LAWRENCE and DOES 1–2~~ KYLE LAWRENCE, JERON

22   JUSTICE, and PETER FUENTES)

23   ~~36.~~34. Plaintiffs repeat and re-allege each and every allegation in the

24   foregoing paragraphs of this Complaint with the same force and effect as if fully

25   set forth herein.

26   ~~37.~~35. DEFENDANT OFFICERS arrived at 84054 Indio Springs Dr., Indio,

27   California for a wellness check call on the DECEDENT. At this location,

28

<center>-9-</center>

DECENDENT's sister told DEFENDANT OFFICERS that the DECEDENT was in "bad shape" and needed to be taken to a hospital. DECEDENT was subsequently contacted by DEFENDANT OFFICERS, who observed DECEDENT exhibiting symptoms of extreme methamphetamine toxicity, including extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion, rapid eye movement, and symptoms of hyperthermia, such as excessive sweating. However, DEFENDANT OFFICERS did not call paramedics or otherwise issue medical treatment for the DECEDENT. On information and belief, LAWRENCE and DOES 1–2 arrived at 84054 Indio Springs Dr., Indio, California for a wellness check call on the DECEDENT. At this location, DECEDENT's sister told LAWRENE that the DECECEDENT needed to be taken to a hospital. DECEDENT was subsequently contacted by LAWRENCE and DOES 1–2. LAWRENCE and DOES 1–2 then told the DECEDENT's sister some of the symptoms they observed including that DECEDENT's pupils were dilated and he was fidgeting. However, on information and belief, LAWRENCE and DOES 1–2 did not call paramedics or otherwise issue medical treatment for the DECEDENT.

38.36. On information and belief, Defendants LAWRENCE AND DOES 1–10DEFENDANT OFFICERS had knowledge of DECEDENT's symptoms and that he needed to see medical professionals for an adequate assessment and treatments when the DECEDENT was seized and arrested by Defendants LAWRENCE and DOES 1–2JUSTICE.

39.37. On information and belief, LAWRENCE and DOES 1–2DEFENDANT OFFICERS did not properly assess the DECEDENT to determine if he needed immediate medical attention. Instead, Defendants LAWRENCE and DOES 1–2JUSTICE arrested the DECEDENT and transported him to John Benoit Detention Center instead of a nearby hospital on August 25, 2022 early in the

1   morning. LAWRENCE and DOES 1–2DEFENDANT OFFICERS did not timely

2   summon medical care or permit medical personnel to treat DECEDENT.

3       40.38. On information and belief, LAWRENCE and DOES 1–2Defendants

4   LAWRENCE and JUSTICE also did not adequately communicate to COUNTY

5   employees at the Detention Center as to DECEDENT's condition and immediate

6   need for medical attention.

7       41.39. LAWRENCE and DOES 1–2DEFENDANT OFFICERS's failure to

8   summon medical care and permit adequate medical attention to DECEDENT

9   caused him pain and suffering and was a contributing cause of DECEDENT's

10  death.

11      42.40. The denial of medical care by LAWRENCE and DOES 1–

12  2DEFENDANT OFFICERS deprived DECEDENT of his right to be secure in his

13  person against denial of medical care as guaranteed to him under the Fourth

14  Amendment to the United States Constitution and applied to state actors by the

15  Fourteenth Amendment.

16      43.41. As a result of the foregoing, DECEDENT suffered pain and suffering,

17  loss of enjoyment of life, and loss of life, and loss of earning capacity.

18      44.42. LAWRENCE and DOES 1–2DEFENDANT OFFICERS knew that

19  failure to provide timely medical treatment to DECEDENT could result in further

20  significant injury or the unnecessary and wanton infliction of pain and injuries, but

21  disregarded that serious medical need, causing DECDENT great bodily harm and

22  death.

23      45.43. The conduct of LAWRENCE and DOES 1–2DEFENDANT

24  OFFICERS was willful, wanton, malicious, and/or done with reckless disregard for

25  the rights and safety of DECEDENT and therefore warrants the imposition of

26  exemplary and punitive damages as to LAWRENCE and DOES 1–2DEFENDANT

27  OFFICERS.

28

46.44. Plaintiffs bring this claim as successors in interest to DECEDENT. Plaintiffs seek survival damages on this claim. Plaintiffs also seek attorney's fees under this claim.

### SECOND CLAIM FOR RELIEF

**Fourteenth Amendment –Denial of Medical Care (42 U.S.C. § 1983)**

(All Plaintiffs against DOES 4–9CARSONC. VENTURA, MOORETAYLOR SMITH, MARK HERMOSILLA, MONTESLUIS MONTEZ AVILA, ALLYSON TOVAR, JUAN VIRAMONTES, LAWRENCE PONCE, RNYURI LOPEZ, RNALEJANDRO VELAZQUEZ, and DOE 9)

47.45. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

48.   Individuals in state custody have a constitutional right to adequate medical treatment. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). The Fourteenth Amendment's Due Process Clause of the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail officials are deliberately indifferent to inmates' medical needs. Gordon v. Cnty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). 42 U.S.C. §1983 provides a private right of action for conduct which violates this right. The failure to provide such care constitutes a form of punishment imposed on persons not convicted of a crime, which is impermissible. *Bell v. Wolfish*, 441 U.S. 520 (1979).

46.

49.47. Pursuant to the Fourteenth Amendment, DECEDENT was entitled to receive necessary and adequate medical attention while in the care and custody of the COUNTY once the DECEDENT was transported to John Benoit Detention Center.

48.    Defendants DOES 4–9DEFENDANT DEPUTIES DEFENDANT NURSES and DOE 9 willfully ignored DECEDENT's medical condition and his medical needs when they did not provide adequate medical assessment/treatment and did not placeto the DECEDENT in a "sobering cell" or a cell which would permit COUNTY employees to monitor him through video cameras, windows, microphones, or other means of surveillance.. By not providing timely adequate medical attention and not placing him in a "sobering cell" or a cell that would permit a closer monitoring of the DECEDENT, Defendants DOES 4–9 caused the DECEDENT's injuries, which resulted in his death.

49.    Defendants VENTURA, MOORESMITH, and DOE 9 conducted DECEDENT's intake. They observed DECEDENT exhibiting symptoms of extreme methamphetamine toxicity, including extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion, rapid eye movement, and symptoms of hyperthermia, such as excessive sweating.

50.    Based on these observations,

50.    Defendants VENTURA, MOORESMITH, and ,and DOE 9 Defendants knew that failure to provide DECEDENT with adequate and timely medical attention could result in serious medical complications and death, but Defendantsthey disregarded that serious medical emergency. Instead of summoning immediate medical aid or taking any other action to further evaluate and treat DECEDENT, they booked him into a jail cell where he went without medical treatment for 9 hours before dying of a drug overdose. The actions and inactions of Defendants VENTURA, MOORESMITH, and DOE 9 ,causeding the DECEDENT great bodily harm and death and failed to protect DECEDENT from harm.

51.    Methamphetamine toxicity can occur within different time frames depending on the method of administration and the individual's metabolism. For oral consumption, peak methamphetamine concentrations occur within 2–4 hours.

-13-

Formatted: Indent: First line:  0.5"

1  The elimination half-life of methamphetamine ranges from 6–15 hours. Considering
2  these factors, it is entirely plausible for overdose symptoms to manifest 9-hour after
3  drug consumption.
4      52.    After DECEDENT was in his cell he was observed by Defendants
5  ~~MOORE~~SMITH, LOPEZ, HERMOSILLA, AVILA, TOVAR, and
6  VIRAMONTES. They observed DECEDENT exhibiting symptoms of extreme
7  methamphetamine toxicity, including extremely labored breathing, fidgeting
8  mannerisms, extreme agitation, confusion, rapid eye movement, and symptoms of
9  hyperthermia, such as excessive sweating. On information and belief, they also
10  observed DECEDENT exhibit signs of chest pain and difficulty breathing and they
11  observed him lose consciousness.
12      53.    Based on these observations, Defendants ~~MOORE~~SMITH, LOPEZ,
13  HERMOSILLA, AVILA, TOVAR, and VIRAMONTES knew that failure to
14  summon immediate medical aid for DECEDENT could result in serious medical
15  complications and death, but they disregarded that serious medical emergency.
16  Instead of summoning immediate medical aid or taking any other action to further
17  evaluate and treat DECEDENT, they ignored his symptoms and left him in a jail
18  cell where he went without medical treatment for 9 hours before dying of a drug
19  overdose. The actions and inactions of Defendants ~~MOORE~~SMITH, LOPEZ,
20  HERMOSILLA, AVILA, TOVAR, and VIRAMONTES caused the DECEDENT
21  great bodily harm and death and failed to protect DECEDENT from harm.
22      54.    At 9:26 a.m. or earlier, DECEDENT was lying on the floor exhibiting
23  even more severe symptoms of methamphetamine toxicity and drug overdose.
24  DECEDENT was still exhibiting symptoms of hyperthermia, but now, he appeared
25  to be unconscious. He was seen by Defendants exhibiting choreoathetoid
26  movements, which can often be part of the symptoms experienced during a drug
27  overdose, particularly with substances like methamphetamine. These movements are
28

1  characterized by involuntary, irregular movements that are a mix of sudden, jerky

2  motions (chorea) and twisting, writhing movements (athetosis). They can occur as a

3  result of the drug's impact on the nervous system.

4       55.    At approximately 9:43 he is still unconscious, but stops moving

5  altogether. On information and belief, it was at this time or shortly thereafter that

6  DECEDENT suffered cardiac arrest.

7       56.    Although there is video surveillance of the cell and DEFENDANT

8  DEPUTIES, specifically Defendant AVILIA, notice the increasingly severe

9  symptoms of drug overdose, a nurse does not arrive to provide care for

10  DECEDENT until 9:53 a.m.

11       57.    An Automated External Defibrillator is not applied to DECEDENT's

12  chest until approximately 9:57 a.m. and chest compression are not applied until

13  approximately 9:58:30 a.m., 15 minutes after DECEDENT's body went still and

14  exhibited clear signs of cardiac arrest.

15       58.    Defendants AVILIA, TOVAR, PONCE, ~~RN~~ LOPEZ, and ~~RN~~

16  VELAZQUEZ, were aware that DECEDENT required immediate medical

17  intervention or he would likely die. But they delayed care for at least 15 minutes.

18  The actions and inactions of Defendants AVILIA, TOVAR, PONCE, ~~RN~~ LOPEZ,

19  and ~~RN~~ VELAZQUEZ caused the DECEDENT great bodily harm and death and

20  failed to protect DECEDENT from harm.

21       ~~52.~~59. Defendants ~~DOES 4–9~~ DEFENDANT DEPUTIES, NURSES, and DOE

22  9 were also deliberately indifferent to DECEDENT's medical needs, medical

23  condition, right to life, and health. The indifference to DECEDENT's medical needs

24  as alleged above were obvious, serious, and substantial. Defendants' acts and

25  omissions as alleged above served no legitimate penological purpose and were

26  sufficiently harmful to evidence deliberate indifference to serious medical needs.

27

28

1    ~~53~~ 60. As a direct and proximate result of the aforementioned conduct,

2    DECEDENT suffered serious injuries including pre-death pain and death.

3    ~~54~~ 61. Defendants are liable for the denial of medical care to DECEDENT,

4    and for DECDENT's injuries and death, either because they were integral

5    participants in the denial of medical care, or because they failed to intervene to

6    prevent these violations.

7    ~~55~~ 62. The conduct of Defendants was willful, wanton, malicious, done with

8    an evil motive and intent and/or with a reckless disregard for the rights and safety of

9    DECEDENT, and therefore warrants the imposition of exemplary and punitive

10   damages as to Defendants ~~DOES 4-9~~ DEFENDANT DEPUTIES and DOE 9.

11   ~~56~~ 63. Plaintiffs bring this claim as  successors-in-interest to the DECEDENT,

12   and seek survival damages, including pre-death pain and suffering, loss of life, and

13   loss of enjoyment of life for the violation of DECEDENT'S rights. Plaintiffs also

14   seek attorney's fees under this claim.

15                        **THIRD CLAIM FOR RELIEF**

16   **Fourteenth Amendment—Substantive Due Process (42 U.S.C. § 1983)**

17     (All Plaintiffs against KYLE LAWRENCE, JERON JUSTICE, PETER

18   FUENTES~~LAWRENCE, DOES 1-2,~~ ~~C.~~CARSON VENTURA,

19   ~~MOORE~~TAYLOR SMITH, MARK HERMOSILLA, ~~MONTES~~LUIS MONTEZ

20   AVILA, ALLYSON TOVAR, JUAN VIRAMONTES, LAWRENCE PONCE,

21   ~~R~~NYURI LOPEZ, ~~R~~NALEJANDRO VELAZQUEZ, and DOE 9~~and DOES 4-9~~)

22   ~~57~~ 64. Plaintiffs repeat and re-allege each and every allegation in the

23   foregoing paragraphs of this Complaint with the same force and effect as if fully

24   set forth herein.

25   ~~58~~ 65. Plaintiffs had a cognizable interest under the Due Process Clause of

26   the Fourteenth Amendment of the United States Constitution to be free from state

27   actions that deprive them of life, liberty, or property in such a manner as to shock

28

-16-

1   the conscience, including but not limited to unwarranted state interference in their

2   familial relationship with their son, DECEDENT.

3          59.66. At all relevant times, Defendants DEFENDANT

4   OFFICERSLAWRENCE, DOES 1-2,, and DOES 4-9DEFENDANT DEPUTIES,

5   and DEFENDANT NURSES acted under color of state law.

6          60.67. As alleged above, on information and belief, Defendants LAWRENCE

7   and JUSTICE LAWRENCE, DOES 1-2, and DOES 4-9 had knowledge of

8   DECEDENT's symptoms and that he needed to see medical professionals for an

9   adequate assessment and treatments when the DECEDENT was seized and arrested

10  by LAWRENCE and DOES 1-2Defendants LAWRENCE and JUSTICE and when

11  the DECEDENT was transported to and in custody at the John Benoit Detention

12  Center.

13         61.68. Defendants LAWRENCE and DOES 1-2DEFENDANT OFFICERS

14  ignored DECEDENT's medical condition and his medical needs by refusing to take

15  the DECEDENT to a hospital. Defendants LAWRENCE and JUSTICE but instead

16  transported him to the detention center, and/or by refusing to provide adequate

17  medical treatment by not calling the ambulance. By not providing adequate medical

18  treatment, transportation to a hospital, and/or adequate communication to DOES 4-

19  DEFENDANT DEPUTIES and DOE 910 as to the DECEDENT's symptoms,

20  LAWRENCE and DOES 1-2DEFENDANT OFFICERS contributed and caused the

21  DECEDENT's injuries which resulted in his death.

22         62.69. Defendants DOES 4-9DEFENDANT DEPUTIES and DEFENDANT

23  NURSES ignored DECEDENT's medical condition and his medical needs when

24  they did not provide adequate medical assessment/treatment and did not place theto

25  DECEDENT in a "sobering cell" or a cell which would permit COUNTY

26  employees to monitor him through video cameras, windows, microphones, or other

27  means of surveillance. By not providing timely adequate medical attention and not

28

1  placing him in a "sobering cell" or a cell that would permit a closer monitoring of
2  the DECEDENT, Defendants DOES 4-9they caused the DECEDENT's injuries,
3  which resulted in his death.

4      63.70. Defendants knew that failure to provide DECEDENT with timely
5  medical attention could result in serious medical complications and death, but
6  Defendants disregarded that serious medical emergency, causing the DECDENT
7  great bodily harm and death and failed to protect DECEDENT from harm.

8      64.71. These actions and omissions on the part of DEFENDANT Defendants
9  LAWRENCEOFFICERS and DEFENDANT DEPUTIES DOES 1-9 were
10 sufficiently harmful to evidence deliberate indifference to DECEDENT's
11 constitutional rights and serious medical needs as alleged above was substantial.
12 Defendants' acts and omissions as alleged above may be fairly said to shock the
13 conscience as DECEDENT was found on the floor approximately nine hours after
14 he was booked at the Detention center and died, when he was arrested for "public
15 intoxication".

16     65.72. As a direct and proximate result of the aforementioned conducts,
17 DECEDENT suffered injuries , including pre-death pain and suffering and
18 died. Plaintiffs have been deprived of the life-long love, companionship, comfort,
19 support, society, care and sustenance of DECEDENT, and will continue to be so
20 deprived for the remainder of their natural lives.

21     66.73. The conducts of Defendants were willful, wanton, malicious, done
22 with an evil motive and intent, and/or done with reckless disregard for the rights
23 and safety of DECEDENT and plaintiffs, and therefore warrant the imposition of
24 exemplary and punitive damages as to the individual Defendants.

25     67.74. Plaintiffs bring this claim individually for the interference with their
26 relationship with their son, DECEDENT, and seek wrongful death damages for the
27
28

violation of their rights. Plaintiffs also seek additional applicable damages

permitted by the law and attorney's fees under this claim under 42 U.S.C. §1988.

### FOURTH CLAIM FOR RELIEF

**Municipal Liability – Failure to Train—(42 U.S.C. §1983)**

(By Plaintiffs against Defendant COUNTY)

68.75.Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

69.76. Defendants DOES 4–10DEFENDANT DEPUTIES, DEFENDANT NURSES, and CHAD BIANCO acted under color of law and within the course and scope of their employment with the COUNTY.

70.77.The acts of Defendants, as set forth above, deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution, including Plaintiffs' constitutional rights to be free from interference with their familial relationship with their son, DECEDENT, as well as DECEDENT's constitutional right to adequate and timely medical attention while in custody of COUNTY.

71.78.The training policies of Defendant COUNTY were not adequate to train its employees to handle the usual and recurring situations in jail with which they must deal, including making sure adequate and timely medical attention is provided to inmates and adequately assessing the medical condition of inmates.

72.79.Specifically, the COUNTY's training program failed to cover critical aspects of law enforcement officers' custodial duties to inmates such as adequate medical evaluation of inmates' emergency medical conditions at intake, timely medical assessment and response, proper monitoring of inmates with medical conditions, and protocols for handling medical emergencies.

73.80.THE COUNTY's training program for its jail staff is critically deficient in educating and preparing staff to identify symptoms of severe drug

-19-

toxicity, a crucial skill set essential for preventing drug overdoses among inmates. The COUNTY's training program lacks comprehensive modules and guidelines on recognizing early and advanced signs of drug toxicity, such as altered mental status, respiratory distress, and cardiovascular abnormalities. As a direct consequence of this educational gap, staff members, including ~~Defendants DOES 4  9~~DEFENDANT DEPUTIES and DEFENDANT NURSES, lacked the necessary knowledge and skills to identify and respond appropriately to the DECEDENT's exhibiting symptoms indicative of an impending drug overdose. This failure in training not only demonstrates a negligent disregard for inmate health and safety but also directly contributed to the inability to prevent the DECEDENT's tragic and preventable death due to drug toxicity. The COUNTY's failure to provide this vital aspect of training is directly responsible for the violation of the DECEDENT's constitutional rights and the harm suffered, because without proper training ~~DOES 4  9~~DEFENDANT DEPUTIES and DOE 9 were bound to fail to provide constitutionally required medical care DECEDENT was entitled to.

~~74.~~81. Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its RCSO jail staff members adequately, including with respect to the provision of medical care to inmates, the housing of inmates in a safe environment, including by adequately monitoring inmates exhibiting medical symptoms/conditions, and the health of inmates.

~~75.~~82. The failure of Defendants COUNTY ~~and DOE 3~~ to provide adequate training caused the deprivation of Plaintiffs' and DECEDENT's rights by ~~Defendants DOES 4  9~~DEFENDANT DEPUTIES and DEFENDANT NURSES; that is, Defendants' failure to train is so closely related to the deprivation of the DECEDENT's and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

-20-

76.83. By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT suffered serious physical injuries and emotional distress relating to the physical injuries. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages.

77.84. Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT. Plaintiffs seek damages applicable by the law. Plaintiffs also seek attorney's fees under this claim pursuant to 42 U.S.C. Section 1988.

### FIFTH CLAIM FOR RELIEF

**Municipal Liability—Unconstitutional Custom or policy (42 U.S.C. §1983)**

(By Plaintiffs against Defendant COUNTY)

78.85. Plaintiffs hereby repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

79.86. Defendants acted under color of state law and within the course and scope of their employment with the COUNTY.

80.87. Defendants DOES 4–9 DEFENDANT DEPUTIES and DEFENDANT NURSES acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the COUNTY.[1]

---

[1] Based on the ACLU report on the in-custody death cases at the Riverside Sheriff's Department's Jails, a high percentage of those listed as natural, suicide, or accidental death while in custody are potentially the result of the subpar medical and mental health care administered by Riverside County Jail facilities. (ACLU's Request for Investigation of RSD, p. 7. https://www.aclusocal.org/sites/default/files/letter_to_ag_bonta_-_investigation_of_rsd4.pdf)

81.88. The acts of Defendants, as set for the above, deprived DECEDENT
and Plaintiffs of their particular rights under the United States Constitution,
including Plaintiffs' constitutional rights to be free from interference with their
familial relationship with their son, DECEDENT, as well as DECEDENT's
constitutional right to adequate and timely medical attention and safe condition of
confinement.

82.89. On information and belief, Defendants DOES 4-9 DEFENDANT
DEPUTIES and DEFENDANT NURSES were not disciplined, reprimanded,
retained, suspended, or otherwise penalized in connection with the denial of
medical care that resulted in DECEDENT's injuries and death.

83.90. Defendant DOE 10 Sheriff CHAD BIANCO, together with other
COUNTY policymakers and supervisors, respectively, maintained, inter alia, the
following unconstitutional customs, practices, and policies:

    a) Not sufficiently staffing the jail with adequate medical staff to handle
inmates' medical issues;

    b) Failing to provide or summon adequate medical treatment to inmates
in need of medical treatment, including that relating to specific health
conditions, and, relatedly, providing adequate training regarding
providing and/or summoning medical treatment for inmates who have
medical needs;

    c) Treating inmates as if no one cares whether they live or die, and,
relatedly, providing inadequate training regarding treating inmates as
human beings;

    d) Failing to timely transport inmates who are showing symptoms of
medical conditions to the hospital and, relatedly, providing inadequate
training regarding when to send inmates with health conditions

-22-

1  including having symptoms of being under the influence to the

2  hospital at the appropriate time;

3  e) Failing to provide a closer observation of inmates who are showing

4  symptoms of medical conditions and, relatedly, providing inadequate

5  training regarding when to place inmates in a special holding cell

6  where a closer observation of their condition is possible;

7  f) Employing and retaining employees whom Defendants COUNTY and

8  ~~DOE 10~~Sheriff CHAD BIANCO at all times material herein knew or

9  reasonably should have known had dangerous propensities for

10  ignoring inmates' medical needs and not providing any attention

11  and/or treatment to inmates with medical conditions and failure to

12  protect DECEDENT from harm;

13  g) Failing to adequately discipline Defendant COUNTY officers, guards,

14  and other employees including ~~Defendants DOES 4–9~~DEFENDANT

15  DEPUTIES, for the above-referenced categories of misconduct,

16  including "slaps on the wrist" discipline that is so slight as to be out of

17  proportion to the magnitude of the misconduct, and other inadequate

18  discipline that is tantamount to encouraging misconduct;

19  h) Announcing that unjustified in-custody deaths and injuries to inmates

20  in the jail are "within policy," including deaths that were later

21  determined in court to be unconstitutional and unjustified.

22  ~~84.~~91. By reason of the aforementioned acts and omissions, Plaintiffs have

23  suffered loss of the love, companionship, affection, comfort, care, society, training,

24  guidance, and past and future support of DECEDENT, and DECEDENT suffered

25  pre-death pain and suffering and death. Accordingly, the COUNTY is liable to

26  Plaintiffs for damages permitted by law.

27

28

-23-

85.92. Defendant DOE 10 Sheriff CHAD BIANCO, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies/customs with respect to the constitutional rights of DECEDENT who was in need of adequate and timely medical attention and monitoring while in custody of the COUNTY, and other individuals similarly situated, or that it was the moving force behind the constitutional violation.

86.93. By perpetuating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOE 10 Sheriff CHAD BIANCO acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's constituional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOE 10 Sheriff CHAD BIANCO were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT.

87.94. Recent developments have underscored the severity of the situation within the Riverside County jail system, particularly concerning the prevalence of drug overdose deaths. On February 23, 2023, the California Attorney General announced that his office had launched an investigation into the Riverside County Sheriff's Department, prompted by a significant and concerning rise in deaths due to drug overdoses in the county's jails.

88.95. The announcement came after a particularly deadly year in the Riverside County jail system. In 2022, 18 individuals died while incarcerated in Riverside County jails, the highest number for the County in the last 15 years.

-24-

89.96. This investigation focuses on whether there is a pattern or practice of unconstitutional conduct, including deliberate indifference to the health and safety of inmates, specifically in relation to the handling of drug use and overdoses within the jails.

90.97. COUNTY Supervisor Kevin Jeffries said he is concerned by the jail deaths, including those from drug overdoses, and hopes the attorney general's investigation will find solutions.

91.98. The COUNTY's refusal to create and enforce policies that would prevent such constitutional violations, combined with its failure to discipline or otherwise hold accountable officers involved in these violations, amounts to a custom and practice of supporting these unconstitutional acts.

92.99. The COUNTY's practices, as evidenced by the Attorney General's investigation and the rising number of in-custody deaths, demonstrate a pervasive and persistent disregard for constitutional rights. This disregard is a direct result of the COUNTY's policies and practices, or lack thereof, which are sanctioned and perpetuated by its final policymakers.

93.100. Plaintiffs further elaborate on the causal connection between the COUNTY's policies and the constitutional violations experienced by DECEDENT. It is asserted that the COUNTY's failure to provide adequate medical care and oversight in its detention facilities is not merely a series of isolated incidents but is indicative of a systemic issue perpetuated by entrenched policies and practices.

94.101. The COUNTY's inadequate staffing of medical professionals, as evidenced in the numerous incidents cited below, directly contributes to the inability to provide timely and sufficient medical care to detainees. This systemic deficiency in medical staffing and resources is a policy decision by the COUNTY, resulting from budgetary allocations and hiring practices. Such decisions, made at

-25-

1   the policy-making level, directly impact the quality of care accessible to detainees,

2   leading to severe consequences, including the loss of life.

3   ~~95.~~102.      Moreover, the COUNTY's pattern of insufficient training and

4   oversight of its employees in handling medical emergencies and care for detainees

5   demonstrates a deliberate indifference to the health and safety of those in its

6   custody. The COUNTY's training programs and supervisory protocols, or lack

7   thereof, are a product of policy decisions. These policies foster an environment

8   where neglect of detainees' medical needs is normalized and perpetuated, directly

9   contributing to the constitutional violations suffered by DECEDENT here.

10   ~~96.~~103.      The Plaintiffs also highlight the COUNTY's disciplinary

11   practices or the lack thereof concerning the mistreatment of detainees. The

12   minimal to non-existent disciplinary actions against officers and staff for

13   neglecting detainees' medical needs are a reflection of the COUNTY's policies.

14   This lack of accountability reinforces a culture of impunity, encouraging the

15   continuation of these constitutional violations and causing the violations of

16   DECEDENT's constitutional rights here.

17   ~~97.~~104.      In sum, the COUNTY's decisions regarding staffing, training,

18   supervision, and discipline within its detention facilities are not isolated

19   administrative choices but are reflective of deeper, institutionalized policies. These

20   policies are the 'moving force' behind the repeated and systemic constitutional

21   violations experienced by the DECEDENT and others in the custody of the

22   COUNTY. Thus, the causal link between the COUNTY's policies and the

23   constitutional infringements is both direct and substantial.

24   ~~98.~~105.      Further, the following cases demonstrate a pattern and practice

25   of the COUNTY maintaining unconstitutional customs, practices and policies,

26   including an unconstitutional custom and policy of failing to provide medical

27

28

1  treatment and/or ignoring basic care such that inmate died. These cases also show a
2  pattern and practice of the COUNTY related to in-custody deaths:

    a)  Decedent's family brought a lawsuit against COUNTY for the
       decedent's death while in-custody. *Josepht et al. v. County of*
       *Riverside*, et al. Case No.5:20-cv-0329-CJC. From on or about August
       19, 2019 to October 6, 2019, the decedent required medical attention
       at the Riverside County Sheriff's Department Jail. The decedent was
       allegedly denied of adequate medical attention and subsequently died.

    b)  Decedent's family brought a lawsuit against COUNTY for the
       decedent's death while in-custody. *Guitierrez, et al. v. County of*
       *Riverside*, et al. No. 5:22-cv-01209-SSS. Decedent was a pre-trial
       detainee at the Riverside County Jail. He was not given immediate
       medical attention while in custody and subsequently died.

    c)  A plaintiff brought a lawsuit based on the alleged facts that he was a
       pre-trial detainee in Riverside County's detention center but denied
       medical attention. He further alleged that his requests for medical
       attention while in-custody were repeatedly ignored even though the
       need for medical attention was apparent for the injury to his foot.
       Subsequently he had to undergo an amputation surgery. *Crossman v.*
       *County of Riverside, et al.* No. 5:22-cv-01226-SSS.

    d)  In the matter of *Mary Garcia et al. v. County of Riverside*, Case No.
       5:18-cv-839 SJO (Asx), the County of Riverside and former Riverside
       County Sheriff Stanley Sniff were sued for the wrongful death after
       deputies used excessive force on decedent inmate Phillip Garcia.
       While in custody, Garcia was placed into a small Sobering Cell.
       Deputies in that matter should have known that Garcia was suffering
       from a psychotic episode and required mental health treatment.

1           Plaintiffs alleged that no medical care was provided to the decedent.

2           The case settled in year 2019.

3      e) In the matter of *Quinton Gray et al. v. County of Riverside*, Case No.

4           EDCV 13-0444 VAP (OPx), the County of Riverside / Riverside

5           County Sheriff's Department was placed on notice of its failures when

6           the plaintiffs sought injunctive relief to stop the County of Riverside's

7           longstanding and routine practice of failing and refusing to

8           obtain/provide medical care to inmates in the Riverside County Jails.

9      f) In *Russell Regalado v. Riverside County*, 5:20-cv-01578-JGB-KK, the

10          Plaintiff alleged that he was beaten unconscious by several jail

11          deputies in the strip search area of the jail facility and then locked in a

12          padded cell for hours and was denied of medical care.

13     ~~99.~~106.    Plaintiffs bring this claim as successors in interest to

14 DECEDENT. Plaintiffs seek survival damages permitted by law under this claim.

15 Plaintiffs further seek attorney's fees under this claim pursuant to 42 U.S.C.

16 section 1988.

17                **SIXTH CLAIM FOR RELIEF**

18   **Supervisory and Municipal Liability – Ratification – (42 U.S.C. §1983)**

19         (By Plaintiffs against Defendants COUNTY)

20     ~~100.~~107.    Plaintiffs hereby repeat and re-allege each and every allegation

21 in the foregoing paragraphs of this Complaint with the same force and effect as if

22 fully set forth herein.

23     ~~101.~~108.    ~~Defendants DOES 4–10~~DEFENDANT DEPUTIES,

24 DEFENDANT NURSES, and CHAD BIANCO acted under color of state law and

25 within the course and scope of their employment with the COUNTY.

26     ~~102.~~109.    The acts of Defendants as set forth above deprived

27 DECEDENT and Plaintiffs of their particular rights under the United States

28

Constitution, including Plaintiffs' constitutional rights to be free from interference with their familial relationship with their son, DECEDENT, as well as DECEDENT's constitutional right to adequate and timely medical attention.

103.110.    Upon information and belief, DOE 10Sheriff CHAD BIANCO, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants DOES 4–9DEFENDANT DEPUTIES and DEFENDANT NURSES, ratified (or will ratify) the acts of Defendants 4–9 and the bases for them. On information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) Defendants' acts, including a determination that Defendants' acts were "within policy."

104.111.    On information and belief, Defendants DOES 4–9DEFENDANT DEPUTIES and DEFENDANT NURSES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the denial of medical care to DECEDENT, which resulted in DECEDENT's injuries and death.

105.112.    By perpetuating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts of not providing adequate and timely medical attention to inmates, DOE 10Sheriff CHAD BIANCO acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOE 10Sheriff CHAD BIANCO were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT.

106.113.    Plaintiffs further clarify and assert that the unconstitutional actions and inactions of Defendants DOES 4–9DEFENDANT DEPUTIES, as detailed in the preceding paragraphs, were not only known to but also explicitly approved by final policymakers within the COUNTY. This approval constitutes a

-29-

deliberate choice by these policymakers to sanction and perpetuate such unconstitutional acts.

107.114.   Evidence suggests that the COUNTY, through its final policymakers, has established, endorsed, and maintained policies or customs that effectively ratify the unconstitutional actions of its employees. These policies are not merely passive oversights but active endorsements of practices that have repeatedly violated constitutional rights.

108.115.   Specifically, the COUNTY's final policymakers have demonstrated a consistent pattern of ignoring or dismissing complaints, failing to investigate incidents thoroughly, and failing to discipline or retrain officers involved in constitutional violations. This pattern evidences an institutional stance that tacitly approves such actions.

109.116.   Furthermore, the COUNTY's failure to revise or rectify policies and practices, even in the face of recurring similar incidents, indicates a deliberate indifference to constitutional rights. This indifference is attributable to the COUNTY's final policymakers, who have the authority and capacity to make substantial changes but choose not to.

110.117.   In addition, specific actions and decisions by the COUNTY's final policymakers in the aftermath of reported incidents illustrate an explicit ratification of unconstitutional actions. These include instances where policymakers have publicly defended the actions of officers involved in constitutional violations or have made determinations that such actions were within policy, despite evidence to the contrary.

111.118.   Therefore, it is not merely the acts of individual officers that have led to the deprivation of constitutional rights, but a broader policy and practice endorsed and ratified by the COUNTY's final policymakers. This policy

and practice have created an environment where unconstitutional acts are not only possible but are also likely to occur with impunity."

112.119.   Recent developments have underscored the severity of the situation within the Riverside County jail system, particularly concerning the prevalence of drug overdose deaths. On February 23, 2023, the California Attorney General announced that his office has launched an investigation into the Riverside County Sheriff's Department, prompted by a significant and concerning rise in deaths due to drug overdoses in the county's jails.

113.120.   The announcement came after a particularly deadly year in the Riverside County jail system. In 2022, 18 individuals died while incarcerated in Riverside County jails, the highest number for the County in the last 15 years.

114.121.   This investigation focuses on whether there is a pattern or practice of unconstitutional conduct, including deliberate indifference to the health and safety of inmates, specifically in relation to the handling of drug use and overdoses within the jails.

115.122.   The COUNTY's response, or rather the lack of an appropriate response to these overdose deaths, suggests a ratification of the unconstitutional acts and omissions by its officers. Such inaction in the face of a clear pattern of overdose deaths demonstrates a deliberate indifference to the rights and well-being of inmates, attributable to the COUNTY's final policymakers.

116.123.   Additionally, the COUNTY's failure to hold its employees accountable for their actions or inactions in these overdose incidents reflects a policy of tacit approval. By not disciplining, retraining, or taking appropriate corrective measures against staff involved in these incidents, the COUNTY effectively ratifies their conduct.

117.124.   The systemic nature of these failures, as highlighted by the Attorney General's investigation, indicates that the issues of drug overdoses and

the consequent deaths in the COUNTY's jails are not merely the result of individual negligence, but rather the outcome of institutional policies and practices, or the lack thereof, sanctioned and perpetuated by the COUNTY's final policymakers.

118.125.   The following cases demonstrate a pattern and practice of the COUNTY ratifying unjustified and unconstitutional in-custody deaths:

a) Decedent's family brought a lawsuit against COUNTY for the decedent's death while in-custody. *Josepht et al. v. County of Riverside*, et al. Case No.5:20-cv-0329-CJC. From on or about August 19, 2019 to October 6, 2019, the decedent required medical attention at the Riverside County Sheriff's Department Jail. The decedent was allegedly denied of adequate medical attenion and subsequently died.

b) Decedent's family brought a lawsuit against COUNTY for the decedent's death while in-custody. *Guitierrez, et al. v. County of Riverside*, et al. No. 5:22-cv-01209-SSS. Decedent was a pre-trial detainee at the Riverside County Jail. He was not given immediate medical attention while in custody and subsequently died.

c) A plaintiff brought a lawsuit based on the alleged facts that he was a pre-trial detainee in Riverside County's detention center but denied of medical attention. He further alleged that his requests for medical attention while in-custody were repeatedly ignored even though the need for medical attention was apparent for the injury to his foot. Subsequently he had to undergo an amputation surgery. *Crossman v. County of Riverside, et al*. No. 5:22-cv-01226-SSS.

d) In the matter of *Mary Garcia et al. v. County of Riverside*, Case No. 5:18-cv-839 SJO (Asx), the County of Riverside and former Riverside

County Sheriff Stanley Sniff were sued for the wrongful death after deputies used excessive force on decedent inmate Phillip Garcia. While in custody, Garcia was placed into a small Sobering Cell. Deputies in that matter should have known that Garcia was suffering from a psychotic episode and required mental health treatment. Plaintiffs alleged that no medical care was provided to the decedent. The case settled in year 2019.

e) In the matter of *Quinton Gray et al. v. County of Riverside*, Case No. EDCV 13-0444 VAP (OPx), the County of Riverside / Riverside County Sheriff's Department was placed on notice of its failures when the plaintiffs sought injunctive relief to stop the County of Riverside's / Riverside County Sheriff's Department's longstanding and routine practice of failing and refusing to obtain/provide medical care to inmates in the Riverside County Jails.

f) In *Russell Regalado v. Riverside County*, 5:20-cv-01578-JGB-KK, the Plaintiff alleged that he was beaten unconscious by several jail deputies in the strip search area of the jail facility and then locked in a padded cell for hours and was denied of medical care.

119.126.   By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT suffered pre-death pain and suffering and death. Accordingly, the COUNTY is liable to Plaintiffs for damages permitted by law.

120.127.   Plaintiffs bring this claim as successors in interest to DECEDENT. Plaintiffs seek survival damages for the violations of DECEDENT's constitutional rights, including his constitutional right to adequate medical care and

-33-

safe condition of confinement. Plaintiffs seek damages permitted by law and seek attorney's fees under this claim under 42 U.S.C. section 1988.

### SEVENTH CLAIM FOR RELIEF

### Negligence

(By Plaintiffs against KYLE LAWRENCE, JERON JUSTICE, PETER FUENTES, LAWRENCE and DOES 1-3, and CITY)

121.128.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

122.129.   Law enforcement officers, including DEFENDANT OFFICERS LAWRENCE and DOES 1-3 have a duty to use reasonable care to prevent harm or injury to others. This duty includes calling for an ambulance for medical assessment of a person they seized and arrested.

123.130.   LAWRENCE and DOES 1-2DEFENDANT OFFICERS breached such duty of care. Upon information and belief, the actions and inactions of LAWRENCE and DOES 1-2DEFENDANT OFFICERS were negligent and reckless, including but not limited to:

    (a)   the failure to properly and adequately assess DECEDENT's need for adequate medical attention/treatment;

    (b)   the failure to provide prompt and adequate medical care to DECEDENT;

    (c)   the failure to protect DECEDENT while he was in custody and care of CITY

    (d)   the negligent communication of information during the incident; and

1    (e)    the failure to provide appropriate responses to obvious mental

2          health crisis calls.

3    ~~124.~~131.    As a direct and proximate result of Defendants' conduct as

4 alleged above, and other undiscovered negligent conduct, DECEDENT

5 experienced pain and suffering and ultimately died. Also, as a direct and proximate

6 result of Defendants' conduct as alleged above, Plaintiffs suffered emotional

7 distress and mental anguish. Plaintiffs also have been deprived of the life-long

8 love, companionship, comfort, support, society, care and sustenance of

9 DECEDENT, and will continue to be so deprived for the remainder of their natural

10 lives.

11    ~~125.~~132.    ~~Defendant DOE 3 is vicariously liable under California law and~~

12 ~~the doctrine of *respondeat superior* pursuant to Section 815.2(a) of the California~~

13 ~~Government Code, which provides that a public entity is liable for the injuries~~

14 ~~caused by its employees within the scope of the employment if the employee's act~~

15 ~~would subject him or her to liability.~~CITY is vicariously liable for the wrongful

16 acts of DEFENDANT OFFICERS, inclusive pursuant to section 815.2(a) of the

17 California Government Code, which provides that a public entity is liable for the

18 injuries caused by its employees within the scope of the employment if the

19 employee's act would subject him or her to liability.

20    133.   Plaintiffs bring this claim individually and as successors-in-interest to

21 DECEDENT. Plaintiffs seek survival damages, including pain and suffering, and

22 wrongful death damages under this claim.

23 ~~126.~~

**Formatted:** No bullets or numbering

24            **EIGHTH CLAIM FOR RELIEF**

25            **Violation of Cal. Civil Code § 52.1**

26        (By Plaintiffs against KYLE LAWRENCE, JERON JUSTICE, PETER

27            FUENTES, ~~LAWRENCE, DOES 1–3,~~ and CITY)

28

1    127.134.    Plaintiffs repeat and re-allege each and every allegation in the

2    foregoing paragraphs of this Complaint with the same force and effect as if fully

3    set forth herein.

4    128.135.    California Civil Code, Section 52.1 (the Bane Act), prohibits

5    any person from intentionally interfering with a person's constitutional rights,

6    which can be shown by a reckless disregard for that person's constitutional rights.

7    Here, Defendants LAWRENCE and DOES 1-2DEFENDANT OFFICERS acted

8    with a reckless disregard for DECEDENT's constitutional rights when they

9    continuously ignored DECEDENT's conditions and need for adequate medical

10   attention/treatment, which shows Defendants LAWRENCE and DOES 1-

11   2DEFENDANT OFFICERS's intent to violate DECEDENT's constitutional rights.

12   129.136.    On information and belief, LAWRENCE and DOES 1-

13   2DEFENDANT OFFICERS, while working for the CITY and acting within the

14   course and scope of their duties, acted in reckless disregard of DECEDENT's civil

15   rights, including by ignoring DECEDENT's condition and need for adequate

16   medical attention/treatment and denying him necessary medical care, to prevent

17   him from exercising his right to have adequate medical attention, or to retaliate

18   against him for having exercised his rights, to be free from state actions that shock

19   the conscience, and to life, liberty, and property.

20   130.137.    On information and belief, Defendants specifically intended to

21   violate DECEDENT's constitutional rights as stated above, as demonstrated by

22   LAWRENCE and DOES 1-2DEFENDANT OFFICERS's reckless disregard for

23   DECEDENT's constitutional rights to have adequate medical attention and be free

24   from denial of medical care, which he was fully entitled to enjoy. Thus, Plaintiffs

25   can recover for violation of the Bane Act as successors-in-interest to DECEDENT.

26   131.138.    On information and belief, DECEDENT reasonably believed

27   and understood that the violent acts committed by LAWRENCE and DOES 1-

28

-36-

1 2DEFENDANT OFFICERS , inclusive were intended to coercively interfere with

2 DECEDENT's civil rights, to discourage him from exercising the above civil

3 rights or to prevent him from exercising such rights.

4     132.139.   Defendants successfully interfered with the above civil rights

5 of DECEDENT.

6     133.140.   The conduct of Defendants was a substantial factor in causing

7 DECEDENT's harms, losses, injuries, death and damages.

8     134.   Defendant DOE 3 is vicariously liable under California law and the

9 doctrine of *respondeat superior.*

10     135.141.   CITY is vicariously liable for the wrongful acts of

11 DEFENDANT OFFICERSLAWRENCE and DOES 1–3, inclusive pursuant to

12 section 815.2(a) of the California Government Code, which provides that a public

13 entity is liable for the injuries caused by its employees within the scope of the

14 employment if the employee's act would subject him or her to liability.

15     136.142.   The conduct of Defendants was malicious, wanton, oppressive,

16 and/or accomplished with a conscious disregard for DECEDENT's rights,

17 justifying an award of exemplary and punitive damages as to LAWRENCE and

18 DOES 1–2DEFENDANT OFFICERS.

19     137.143.   Plaintiffs bring this claim as successors-in-interest to

20 DECEDENT and seek survival damages, including emotional distress, loss of life,

21 and loss of enjoyment of life under this claim. Plaintiffs also seek treble damages,

22 attorney's fees, and costs under this claim.

23

24

25

26

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs individually and as successors-in-interest to DECEDENT, request entry of judgment in their favor and against Defendants COUNTY OF RIVERSIDE, CITY OF INDIO, KYLE LAWRENCE, JERON JUSTICE, PETER FUENTES, CARSON C. VENTURA, MOORETAYLOR SMITH, MARK HERMOSILLA, MONTESLUIS MONTEZ AVILA, ALLYSON TOVAR, JUAN VIRAMONTES, LAWRENCE PONCE, YURI LOPEZ, ALEJANDRO VELAZQUEZ, DOE 9, and CHAD BIANCOLAWRENCE, DOES 1–10, CITY and COUNTY, inclusive, as follows:

A. For compensatory damages, including both survival damages and wrongful death damages under federal law, in an amount to be proven at trial;

B. For funeral and burial expenses, and loss of financial support;

C. For punitive damages against the individual defendants in an amount to be proven at trial;

D. For statutory damages;

E. For interest;

F. For reasonable attorneys' fees, including litigation expenses;

G. For costs of suit; and

H. For such further relief as the Court may deem just, proper, and appropriate.

Formatted: Indent: Left: 0.5", Hanging: 0.5"

DATED: February 2, 2024February 2, 2024February 1, 2024February 1, 2024January 8, 2024 LAW OFFICES OF DALE K. GALIPO

By _____

Dale K. Galipo
Attorneys for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED: February 2, 2024        LAW OFFICES OF DALE K. GALIPO

By _____

Dale K. Galipo
Attorneys for Plaintiffs

-39-