**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (Bar No. 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California, 91367
Telephone: (818) 347-3333

**THE LAW OFFICE OF BRADLEY I. KRAMER**
Bradley I. Kramer, Esq. (SBN 234351)
bkramer@biklaw.com
8840 Wilshire Blvd. Suite 350
Beverly Hills, California 90211-2606
Telephone: (310) 289-2600

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA ZAZUETA, OCTAVIO ZAZUETA, individually and as successors-in-interest to OCTAVIO ZAZUETA Jr., deceased;<br><br>      Plaintiffs,<br><br>vs.<br><br>COUNTY OF RIVERSIDE; CITY OF INDIO; KYLE LAWRENCE; JERON JUSTICE; PETER FUENTES; CARSON VENTURA; TAYLOR SMITH; MARK HERMOSILLA; LUIS MONTEZ AVILA; ALLYSON TOVAR; JUAN VIRAMONTES; LAWRENCE PONCE; YURI LOPEZ, ALEJANDRO VELAZQUEZ, DOE 9; and CHAD BIANCO, inclusive,<br><br>      Defendants. | Case No. 5:23-cv-1825-WLH-SHK<br><br>**THIRD AMENDED COMPLAINT**<br><br>1. Fourth Amendment- Denial of Medical Care (42 U.S.C. § 1983)<br>2. Fourteenth Amendment—Denial of Medical Care (42 U.S.C. § 1983)<br>3. Fourteenth Amendment—Substantive Due Process (42 U.S.C. § 1983)<br>4. Municipal Liability –Failure to Train (42 U.S.C. § 1983)<br>5. Municipal Liability –Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>6. Municipal Liability—Ratification (42 U.S.C. § 1983)<br>7. Negligence (Survival and Wrongful Death)<br>8. Violation of Cal. Civil Code § 52.1<br><br>**DEMAND FOR JURY TRIAL** |

1

## **COMPLAINT FOR DAMAGES**

2

Come now Plaintiffs ROSA ZAZUETA and OCTAVIO ZAZUETA,

3
individually and as successors-in-interest to Octavio Zazueta Jr., deceased, for their

4
Third Amended Complaint against Defendants COUNTY OF RIVERSIDE, CITY

5
OF INDIO, KYLE LAWRENCE, JERON JUSTICE, PETER FUENTES,

6
CARSON VENTURA, TAYLOR SMITH, MARK HERMOSILLA, LUIS

7
MONTEZ AVILA, ALLYSON TOVAR, JUAN VIRAMONTES, LAWRENCE

8
PONCE, YURI LOPEZ, ALEJANDRO VELAZQUEZ, DOE 9, and CHAD

9
BIANCO, alleging as follows:

10

## **JURISDICTION AND VENUE**

11

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and

12
1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United

13
States including 42 U.S.C. §1983 and the Fourteenth Amendment of the United

14
States Constitution. This Court has supplemental jurisdiction over Plaintiffs'

15
claims arising under state law pursuant to 28 U.S.C. §1367(a) because those claims

16
are so related to the federal claims that they form part of the same case or

17
controversy under Article III of the United States Constitution.

18

2.     Venue is proper in this Court under 28 U.S.C. §1391(b) because the

19
parties reside in, and all incidents, events, and occurrences giving rise to this action

20
occurred in the County of Riverside, California.

21

## **INTRODUCTION**

22

3.     This civil rights and state tort action seeks compensatory and punitive

23
damages from Defendants for violating various rights under the United States

24
Constitution and state law in connection with the in-custody death of Plaintiffs'

25
son, Octavio Zazueta Jr. on August 26, 2022, and the repeated denial of medical

26
care to him starting on or about 12 a.m., August 25, 2022.

27

28

**PARTIES**

4.      At all relevant times, Decedent Octavio Zazueta Jr. ("DECEDENT") was an individual residing in the County of Riverside, California.

5.      Plaintiff Rosa Zazueta is an individual residing in the City of Coachella, County of Riverside, California. Rosa Zazueta is the natural mother of DECEDENT and sues in her individual capacity and as successor-in-interest to DECEDENT. Rosa Zazueta seeks survival damages, wrongful death damages, compensatory damages and punitive damages under federal and state law.

6.      Plaintiff Octavio Zazueta is an individual residing in the County of Riverside, California. Octavio Zazueta is the natural father of DECEDENT and sues in his individual capacity and as successor-in-interest to DECEDENT. Octavio Zazueta seeks survival damages, wrongful death damages, compensatory damages, and punitive damages under federal and state law.

7.      At all relevant times, Defendant CITY OF INDIO ("CITY") is and was a duly organized public entity existing under the laws of the State of California. CITY is and was responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the Indio Police Department ("IPD") and its agents and employees. At all relevant times, Defendant CITY is and was responsible for the management and overseeing of the IPD, for the actions or inactions of Defendants KYLE LAWRENCE, JERON JUSTICE, and PETER FUENTES (collectively, "DEFENDANT OFFICERS"). At all relevant times, CITY was the employer of DEFENDANT OFFICERS.

8.      At all relevant times, Defendant COUNTY OF RIVERSIDE ("COUNTY") is and was a duly organized public entity existing under the laws of the State of California. COUNTY is and was responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and

agencies, including the Riverside County Sheriff's Office ("RCSO") and its agents and employees. At all relevant times, Defendant COUNTY is and was responsible for the management and overseeing of the RCSO, for the actions or inactions of CARSON VENTURA, TAYLOR SMITH, MARK HERMOSILLA, LUIS MONTEZ AVILA, ALLYSON TOVAR, JUAN VIRAMONTES, LAWRENCE PONCE ("DEFENDANT DEPUTIES"), YURI LOPEZ, ALEJANDRO VELAZQUEZ, DOE 9 ("DEFENDANT NURSES"), and Sheriff CHAD BIANCO. The COUNTY is also responsible for the policies, practices, and/or customs relating to the COUNTY and its deputies and employees. At all relevant times, COUNTY was the employer of DEFENDANT DEPUTIES, DEFENDANT NURSES, and Sheriff CHAD BIANCO.

9. At all relevant times, DEFENDANT OFFICERS were duly appointed by CITY as IPD officers and employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials. DEFENDANT OFFICERS acted under color of law within the course and scope of their duties as officers for the IPD. At all relevant times, DEFENDANT OFFICERS were acting within the complete authority of their principal, Defendant CITY.

10. At all relevant times, DEFENDANT DEPUTIES and DEFENDANT NURSES were duly appointed by COUNTY as RCSO deputies or nurses and employees or agents of COUNTY, subject to oversight and supervision by COUNTY's elected and non-elected officials. DEFENDANT DEPUTIES and NURSES acted under color of law and within the course and scope of their duties as officers and medical employees (such as jail nurses and/or other jail medical professionals) for the COUNTY. At all relevant times, DEFENDANT DEPUTIES were acting within the complete authority and ratification of their principal, Defendant COUNTY.

11.     At all relevant times, Defendant Sheriff CHAD BIANCO is a managerial, supervisorial, and policymaking employee of the COUNTY, who was acting under color of law within the course and scope of their duties as a managerial, supervisorial, and policymaking employee for the COUNTY. Sheriff CHAD BIANCO was acting with the complete authority and ratification of their principal, Defendant COUNTY.

12.     In doing the acts and failing and omitting to act as hereinafter described, DEFENDANT OFFICERS were acting on the implied and actual permission and consent of Defendant CITY.

13.     In doing the acts and failing and omitting to act as hereinafter described, DEFENDANT DEPUTIES, DEFENDANT NURSES, and CHAD BIANCO were acting on the implied and actual permission and consent of Defendant COUNTY.

14.     On information and belief, DEFENDANT OFFICERS, DEFENDANT DEPUTIES, DEFENDANT NURSES, and CHAD BIANCO are residents of the County of Riverside.

15.     DEFENDANT OFFICERS, DEFENDANT DEPUTIES, DEFENDANT NURSES, and CHAD BIANCO are sued in their individual capacities.

16.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

17.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or

employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

18.     On or about February 20, 2023 Plaintiffs filed comprehensive and timely claims for damages with the CITY and COUNTY pursuant to the applicable sections of the California Government Code. Said claims were rejected by CITY on March 7, 2023. Plaintiffs filed this lawsuit on September 7, 2023.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

19.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

20.     On August 24, 2022, DECEDENT was experiencing a mental health crisis and a medical crisis due to methamphetamine toxicity. The DECEDENT exhibited bizarre behavior including extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion, hallucinations, and paranoia. There were also signs of rapid eye movement and symptoms of hyperthermia, such as excessive sweating. These symptoms are indicative of severe methamphetamine intoxication, a condition that can lead to a life-threatening medical emergency.

21.     DEFENDANT OFFICERS arrived at 84054 Indio Springs Dr., Indio, California for a wellness check call on the DECEDENT. At this location, DECEDENT's sister told DEFENDANT OFFICERS that the DECEDENT was in "bad shape" and needed to be taken to a hospital. DECEDENT was subsequently contacted by DEFENDANT OFFICERS, who observed DECEDENT exhibiting symptoms of extreme methamphetamine toxicity, including extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion, rapid eye movement, and symptoms of hyperthermia, such as excessive sweating. However, DEFENDANT OFFICERS did not call paramedics or otherwise issue medical treatment for the DECEDENT.

22.     DEFENDANT OFFICERS did not properly assess the DECEDENT to determine if he needed immediate medical attention. Defendants LAWRENCE and JUSTICE arrested the DECEDENT and transported him to John Benoit Detention Center instead of a nearby hospital.

23.     Defendants LAWRENCE and JUSTICE did not adequately communicate to COUNTY employees at the Detention Center as to DECEDENT's condition and immediate need for medical attention.

24.     DEFENDANT OFFICERS's failure to properly assess DECEDENT for medical treatment, failure to determine that he needed medical attention, and failure to communicate his condition to COUNTY employees at the Detention Center contributed to and resulted in DECEDENT not receiving the immediate medical attention he needed.

25.     On information and belief, when DECEDENT was transported to the Detention Center, DECEDENT was experiencing a severe substance overdose and was in clear need of immediate medical intervention and treatment. However, DEFENDANT DEPUTIES failed to adequately assess DECEDENT even though DOE 9 was a trained jail nurse and/or medical professional.

26.     DEFENDANT DEPUTIES failed to call for medical assistance even though they could see that DECEDENT was suffering from severe symptoms of methamphetamine intoxication which they knew meant he was at extremely high risk of suffering a fatal drug overdose.

27.     As a result of the foregoing failures, the DECEDENT was found unresponsive in his cell approximately nine hours after he was booked. He was then transported to a hospital where he was pronounced dead.

28.     From the time the DECEDENT was booked at the Detention center and until his death, DEFENDANT DEPUTIES were on notice that the DECEDENT was under the influence of an intoxicating substance to a life-

threatening degree, given that DECEDENT displayed clear symptoms of severe methamphetamine toxicity, such as: labored breathing, fidgeting mannerisms, extreme agitation, confusion, hallucinations, and paranoia, rapid eye movement, and hyperthermia.

29. By taking no measures to care for DECEDENT while he suffered from severe methamphetamine toxicity, DEFENDANT DEPUTIES at the John Benoit Detention Center denied the DECEDENT necessary medical care, resulting in his unnecessary death.

30. At all relevant times, the involved COUNTY employees, including deputies, jail staff, and medical personnel were acting under color of state law and in the course and scope of their employment with the COUNTY.

31. As a result of their actions and inactions, the DECEDENT experienced pain and suffering, and loss of life.

32. Plaintiff ROSA ZAZUETA is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action as the natural mother of DECEDENT.

**33.** Plaintiff OCTAVIO ZAZUETA is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action as the natural father of DECEDENT.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment —Denial of Medical Care (42 U.S.C. § 1983)

(All Plaintiffs against KYLE LAWRENCE, JERON JUSTICE, and PETER FUENTES)

34. Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

35.     DEFENDANT OFFICERS arrived at 84054 Indio Springs Dr., Indio, California for a wellness check call on the DECEDENT. At this location, DECEDENT's sister told DEFENDANT OFFICERS that the DECEDENT was in "bad shape" and needed to be taken to a hospital. DECEDENT was subsequently contacted by DEFENDANT OFFICERS, who observed DECEDENT exhibiting symptoms of extreme methamphetamine toxicity, including extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion, rapid eye movement, and symptoms of hyperthermia, such as excessive sweating. However, DEFENDANT OFFICERS did not call paramedics or otherwise issue medical treatment for the DECEDENT.

36.     DEFENDANT OFFICERS had knowledge of DECEDENT's symptoms and that he needed to see medical professionals for an adequate assessment and treatments when the DECEDENT was seized and arrested by Defendants LAWRENCE and JUSTICE.

37.     DEFENDANT OFFICERS did not properly assess the DECEDENT to determine if he needed immediate medical attention. Instead, Defendants LAWRENCE and JUSTICE arrested the DECEDENT and transported him to John Benoit Detention Center instead of a nearby hospital on August 25, 2022 early in the morning. DEFENDANT OFFICERS did not timely summon medical care or permit medical personnel to treat DECEDENT.

38.     Defendants LAWRENCE and JUSTICE also did not adequately communicate to COUNTY employees at the Detention Center as to DECEDENT's condition and immediate need for medical attention.

39.     DEFENDANT OFFICERS's failure to summon medical care and permit adequate medical attention to DECEDENT caused him pain and suffering and was a contributing cause of DECEDENT's death.

40.     The denial of medical care by DEFENDANT OFFICERS deprived DECEDENT of his right to be secure in his person against denial of medical care as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

41.     As a result of the foregoing, DECEDENT suffered pain and suffering, loss of enjoyment of life, and loss of life, and loss of earning capacity.

42.     DEFENDANT OFFICERS knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain and injuries, but disregarded that serious medical need, causing DECDENT great bodily harm and death.

43.     The conduct of DEFENDANT OFFICERS was willful, wanton, malicious, and/or done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT OFFICERS.

44.     Plaintiffs bring this claim as successors in interest to DECEDENT. Plaintiffs seek survival damages on this claim. Plaintiffs also seek attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment –Denial of Medical Care (42 U.S.C. § 1983)

(All Plaintiffs against CARSON VENTURA, TAYLOR SMITH, MARK HERMOSILLA, LUIS MONTEZ AVILA, ALLYSON TOVAR, JUAN VIRAMONTES, LAWRENCE PONCE, YURI LOPEZ, ALEJANDRO VELAZQUEZ, and DOE 9)

45.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

46.     Individuals in state custody have a constitutional right to adequate medical treatment. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). The Fourteenth Amendment's Due Process Clause of the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where jail officials are deliberately indifferent to inmates' medical needs. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). 42 U.S.C. §1983 provides a private right of action for conduct which violates this right.

47.     Pursuant to the Fourteenth Amendment, DECEDENT was entitled to receive necessary and adequate medical attention while in the care and custody of the COUNTY once the DECEDENT was transported to John Benoit Detention Center.

48.     Defendants DEFENDANT DEPUTIES and DOE 9 willfully ignored DECEDENT's medical condition and his medical needs when they did not provide adequate medical assessment/treatment to the DECEDENT.

49.     Defendants VENTURA, SMITH, and DOE 9 conducted DECEDENT's intake. They observed DECEDENT exhibiting symptoms of extreme methamphetamine toxicity, including extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion, rapid eye movement, and symptoms of hyperthermia, such as excessive sweating.

50.     Based on these observations, Defendants VENTURA, SMITH, and DOE 9 knew that failure to provide DECEDENT with adequate and timely medical attention could result in serious medical complications and death, but they disregarded that serious medical emergency. Instead of summoning immediate medical aid or taking any other action to further evaluate and treat DECEDENT, they booked him into a jail cell where he went without medical treatment for 9 hours before dying of a drug overdose. The actions and inactions of Defendants

VENTURA, SMITH, and DOE 9 caused the DECEDENT great bodily harm and death and failed to protect DECEDENT from harm.

51.     Methamphetamine toxicity can occur within different time frames depending on the method of administration and the individual's metabolism. For oral consumption, peak methamphetamine concentrations occur within 2–4 hours. The elimination half-life of methamphetamine ranges from 6–15 hours. Considering these factors, it is entirely plausible for overdose symptoms to manifest 9-hour after drug consumption.

52.     After DECDENT was in his cell he was observed by Defendants SMITH, LOPEZ, HERMOSILLA, AVILA, TOVAR, and VIRAMONTES. They observed DECEDENT exhibiting symptoms of extreme methamphetamine toxicity, including extremely labored breathing, fidgeting mannerisms, extreme agitation, confusion, rapid eye movement, and symptoms of hyperthermia, such as excessive sweating. On information and belief, they also observed DECEDENT exhibit signs of chest pain and difficulty breathing and they observed him lose consciousness.

53.     Based on these observations, Defendants SMITH, LOPEZ, HERMOSILLA, AVILA, TOVAR, and VIRAMONTES knew that failure to summon immediate medical aid for DECEDENT could result in serious medical complications and death, but they disregarded that serious medical emergency. Instead of summoning immediate medical aid or taking any other action to further evaluate and treat DECEDENT, they ignored his symptoms and left him in a jail cell where he went without medical treatment for 9 hours before dying of a drug overdose. The actions and inactions of Defendants SMITH, LOPEZ, HERMOSILLA, AVILA, TOVAR, and VIRAMONTES caused the DECEDENT great bodily harm and death and failed to protect DECEDENT from harm.

54.     At 9:26 a.m. or earlier, DECEDENT was lying on the floor exhibiting even more severe symptoms of methamphetamine toxicity and drug overdose.

DECEDENT was still exhibiting symptoms of hyperthermia, but now, he appeared to be unconscious. He was seen by Defendants exhibiting choreoathetoid movements, which can often be part of the symptoms experienced during a drug overdose, particularly with substances like methamphetamine. These movements are characterized by involuntary, irregular movements that are a mix of sudden, jerky motions (chorea) and twisting, writhing movements (athetosis). They can occur as a result of the drug's impact on the nervous system.

55.     At approximately 9:43 he is still unconscious, but stops moving altogether. On information and belief, it was at this time or shortly thereafter that DECEDENT suffered cardiac arrest.

56.     Although there is video surveillance of the cell and DEFENDANT DEPUTIES, specifically Defendant AVILIA, notice the increasingly severe symptoms of drug overdose, a nurse does not arrive to provide care for DECEDENT until 9:53 a.m.

57.     An Automated External Defibrillator is not applied to DECEDENT's chest until approximately 9:57 a.m. and chest compression are not applied until approximately 9:58:30 a.m., 15 minutes after DECEDENT's body went still and exhibited clear signs of cardiac arrest.

58.     Defendants AVILIA, TOVAR, PONCE, LOPEZ, and VELAZQUEZ, were aware that DECEDENT required immediate medical intervention or he would likely die. But they delayed care for at least 15 minutes. The actions and inactions of Defendants AVILIA, TOVAR, PONCE, LOPEZ, and VELAZQUEZ caused the DECEDENT great bodily harm and death and failed to protect DECEDENT from harm.

59.     Defendants DEFENDANT DEPUTIES, NURSES, and DOE 9 were also deliberately indifferent to DECEDENT's medical needs, medical condition, right to life, and health. The indifference to DECEDENT's medical needs as alleged

above were obvious, serious, and substantial. Defendants' acts and omissions as alleged above served no legitimate penological purpose and were sufficiently harmful to evidence deliberate indifference to serious medical needs.

60.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered serious injuries including pre-death pain and death.

61.     Defendants are liable for the denial of medical care to DECEDENT, and for DECDENT's injuries and death, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

62.     The conduct of Defendants was willful, wanton, malicious, done with an evil motive and intent and/or with a reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DEFENDANT DEPUTIES and DOE 9.

63.     Plaintiffs bring this claim as  successors-in-interest to the DECEDENT, and seek survival damages, including pre-death pain and suffering, loss of life, and loss of enjoyment of life for the violation of DECEDENT'S rights. Plaintiffs also seek attorney's fees under this claim.

## THIRD CLAIM FOR RELIEF

**Fourteenth Amendment—Substantive Due Process (42 U.S.C. § 1983)**

(All Plaintiffs against KYLE LAWRENCE, JERON JUSTICE, PETER FUENTES, CARSON VENTURA, TAYLOR SMITH, MARK HERMOSILLA, LUIS MONTEZ AVILA, ALLYSON TOVAR, JUAN VIRAMONTES, LAWRENCE PONCE, YURI LOPEZ, ALEJANDRO VELAZQUEZ, and DOE 9)

64.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

65.    Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in their familial relationship with their son, DECEDENT.

66.    At all relevant times, DEFENDANT OFFICERS, DEFENDANT DEPUTIES, and DEFENDANT NURSES acted under color of state law.

67.    As alleged above, on information and belief, Defendants LAWRENCE and JUSTICE had knowledge of DECEDENT's symptoms and that he needed to see medical professionals for an adequate assessment and treatments when the DECEDENT was seized and arrested by Defendants LAWRENCE and JUSTICE and when the DECEDENT was transported to and in custody at the John Benoit Detention Center.

68.    DEFENDANT OFFICERS ignored DECEDENT's medical condition and his medical needs by refusing to take the DECEDENT to a hospital. Defendants LAWRENCE and JUSTICE instead transported him to the detention center, refusing to provide adequate medical treatment by not calling the ambulance. By not providing adequate medical treatment, transportation to a hospital, and/or adequate communication to DEFENDANT DEPUTIES and DOE 9 as to the DECEDENT's symptoms, DEFENDANT OFFICERS contributed and caused the DECEDENT's injuries which resulted in his death.

69.    DEFENDANT DEPUTIES and DEFENDANT NURSES ignored DECEDENT's medical condition and his medical needs when they did not provide adequate medical assessment/treatment to DECEDENT. By not providing timely adequate medical attention, they caused the DECEDENT's injuries, which resulted in his death.

70.     Defendants knew that failure to provide DECEDENT with timely medical attention could result in serious medical complications and death, but Defendants disregarded that serious medical emergency, causing the DECDENT great bodily harm and death and failed to protect DECEDENT from harm.

71.     These actions and omissions on the part of DEFENDANT OFFICERS, DEFENDANT DEPUTIES, and DEFENDANT NURSES were sufficiently harmful to evidence deliberate indifference to DECEDENT's constitutional rights and serious medical needs as alleged above was substantial. Defendants' acts and omissions as alleged above may be fairly said to shock the conscience as DECEDENT was found on the floor approximately nine hours after he was booked at the Detention center and died, when he was arrested for "public intoxication".

72.     As a direct and proximate result of the aforementioned conduct, DECEDENT suffered injuries—including pre-death pain and suffering—and died. Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

73.     The conducts of Defendants were willful, wanton, malicious, done with an evil motive and intent, and/or done with reckless disregard for the rights and safety of DECEDENT and plaintiffs, and therefore warrant the imposition of exemplary and punitive damages as to the individual Defendants.

74.     Plaintiffs bring this claim individually for the interference with their relationship with their son, DECEDENT, and seek wrongful death damages for the violation of their rights. Plaintiffs also seek additional applicable damages permitted by the law and attorney's fees under this claim under 42 U.S.C. §1988.

### **FOURTH CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train—(42 U.S.C. §1983)**

(By Plaintiffs against Defendant COUNTY)

THIRD AMENDED COMPLAINT

75.     Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

76.     DEFENDANT DEPUTIES, DEFENDANT NURSES, and CHAD BIANCO acted under color of law and within the course and scope of their employment with the COUNTY.

77.     The acts of Defendants, as set forth above, deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution, including Plaintiffs' constitutional rights to be free from interference with their familial relationship with their son, DECEDENT, as well as DECEDENT's constitutional right to adequate and timely medical attention while in custody of COUNTY.

78.     The training policies of Defendant COUNTY were not adequate to train its employees to handle the usual and recurring situations in jail with which they must deal, including making sure adequate and timely medical attention is provided to inmates and adequately assessing the medical condition of inmates.

79.     Specifically, the COUNTY's training program failed to cover critical aspects of law enforcement officers' custodial duties to inmates such as adequate medical evaluation of inmates' emergency medical conditions at intake, timely medical assessment and response, proper monitoring of inmates with medical conditions, and protocols for handling medical emergencies.

80.     The COUNTY's training program for its jail staff is critically deficient in educating and preparing staff to identify symptoms of severe drug toxicity, a crucial skill set essential for preventing drug overdoses among inmates. The COUNTY's training program lacks comprehensive modules and guidelines on recognizing early and advanced signs of drug toxicity, such as altered mental status, respiratory distress, and cardiovascular abnormalities. As a direct consequence of this educational gap, staff members, including DEFENDANT

DEPUTIES and DEFENDANT NURSES, lacked the necessary knowledge and skills to identify and respond appropriately to the DECEDENT's exhibiting symptoms indicative of an impending drug overdose. This failure in training not only demonstrates a negligent disregard for inmate health and safety but also directly contributed to the inability to prevent the DECEDENT's tragic and preventable death due to drug toxicity. The COUNTY's failure to provide this vital aspect of training is directly responsible for the violation of the DECEDENT's constitutional rights and the harm suffered, because without proper training DEFENDANT DEPUTIES and DOE 9 were bound to fail to provide constitutionally required medical care DECEDENT was entitled to.

81.     Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its RCSO jail staff members adequately, including with respect to the provision of medical care to inmates, the housing of inmates in a safe environment, including by adequately monitoring inmates exhibiting medical symptoms/conditions, and the health of inmates.

82.     The failure of Defendants COUNTY to provide adequate training caused the deprivation of Plaintiffs' and DECEDENT's rights by DEFENDANT DEPUTIES and DEFENDANT NURSES; that is, Defendants' failure to train is so closely related to the deprivation of the DECEDENT's and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

83.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT suffered serious physical injuries and emotional distress relating to the physical injuries. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages.

84.     Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT. Plaintiffs seek damages applicable by the law. Plaintiffs also seek attorney's fees under this claim pursuant to 42 U.S.C. Section 1988.

### FIFTH CLAIM FOR RELIEF

**Municipal Liability—Unconstitutional Custom or policy (42 U.S.C. §1983)**

(By Plaintiffs against Defendant COUNTY)

85.     Plaintiffs hereby repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

86.     Defendants acted under color of state law and within the course and scope of their employment with the COUNTY.

87.     DEFENDANT DEPUTIES and DEFENDANT NURSES acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the COUNTY.[1]

88.     The acts of Defendants, as set for the above, deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution, including Plaintiffs' constitutional rights to be free from interference with their familial relationship with their son, DECEDENT, as well as DECEDENT's constitutional right to adequate and timely medical attention and safe condition of confinement.

---

[1] Based on the ACLU report on the in-custody death cases at the Riverside Sheriff's Department's Jails, a high percentage of those listed as natural, suicide, or accidental death while in custody are potentially the result of the subpar medical and mental health care administered by Riverside County Jail facilities. (ACLU's Request for Investigation of RSD, p. 7. https://www.aclusocal.org/sites/default/files/letter_to_ag_bonta_-_investigation_of_rsd4.pdf)

89.     On information and belief, DEFENDANT DEPUTIES and DEFENDANT NURSES were not disciplined, reprimanded, retained, suspended, or otherwise penalized in connection with the denial of medical care that resulted in DECEDENT's injuries and death.

90.     Defendant Sheriff CHAD BIANCO, together with other COUNTY policymakers and supervisors, respectively, maintained, inter alia, the following unconstitutional customs, practices, and policies:

a)  Not sufficiently staffing the jail with adequate medical staff to handle inmates' medical issues;

b)  Failing to provide or summon adequate medical treatment to inmates in need of medical treatment, including that relating to specific health conditions, and, relatedly, providing adequate training regarding providing and/or summoning medical treatment for inmates who have medical needs;

c)  Treating inmates as if no one cares whether they live or die, and, relatedly, providing inadequate training regarding treating inmates as human beings;

d)  Failing to timely transport inmates who are showing symptoms of medical conditions to the hospital and, relatedly, providing inadequate training regarding when to send inmates with health conditions including having symptoms of being under the influence to the hospital at the appropriate time;

e)  Failing to provide a closer observation of inmates who are showing symptoms of medical conditions and, relatedly, providing inadequate training regarding when to place inmates in a special holding cell where a closer observation of their condition is possible;

f) Employing and retaining employees whom Defendants COUNTY and Sheriff CHAD BIANCO at all times material herein knew or reasonably should have known had dangerous propensities for ignoring inmates' medical needs and not providing any attention and/or treatment to inmates with medical conditions and failure to protect DECEDENT from harm;

g) Failing to adequately discipline Defendant COUNTY officers, guards, and other employees including DEFENDANT DEPUTIES, for the above-referenced categories of misconduct, including "slaps on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

h) Announcing that unjustified in-custody deaths and injuries to inmates in the jail are "within policy," including deaths that were later determined in court to be unconstitutional and unjustified.

91. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT suffered pre-death pain and suffering and death. Accordingly, the COUNTY is liable to Plaintiffs for damages permitted by law.

92. Defendant Sheriff CHAD BIANCO, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies/customs with respect to the constitutional rights of DECEDENT

who was in need of adequate and timely medical attention and monitoring while in custody of the COUNTY, and other individuals similarly situated, or that it was the moving force behind the constitutional violation.

93.   By perpetuating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Sheriff CHAD BIANCO acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's constituional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and Sheriff CHAD BIANCO were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT.

94.   Recent developments have underscored the severity of the situation within the Riverside County jail system, particularly concerning the prevalence of drug overdose deaths. On February 23, 2023, the California Attorney General announced that his office had launched an investigation into the Riverside County Sheriff's Department, prompted by a significant and concerning rise in deaths due to drug overdoses in the county's jails.

95.   The announcement came after a particularly deadly year in the Riverside County jail system. In 2022, 18 individuals died while incarcerated in Riverside County jails, the highest number for the County in the last 15 years.

96.   This investigation focuses on whether there is a pattern or practice of unconstitutional conduct, including deliberate indifference to the health and safety of inmates, specifically in relation to the handling of drug use and overdoses within the jails.

97.   COUNTY Supervisor Kevin Jeffries said he is concerned by the jail deaths, including those from drug overdoses, and hopes the attorney general's investigation will find solutions.

THIRD AMENDED COMPLAINT

98.   The COUNTY's refusal to create and enforce policies that would prevent such constitutional violations, combined with its failure to discipline or otherwise hold accountable officers involved in these violations, amounts to a custom and practice of supporting these unconstitutional acts.

99.   The COUNTY's practices, as evidenced by the Attorney General's investigation and the rising number of in-custody deaths, demonstrate a pervasive and persistent disregard for constitutional rights. This disregard is a direct result of the COUNTY's policies and practices, or lack thereof, which are sanctioned and perpetuated by its final policymakers.

100.   Plaintiffs further elaborate on the causal connection between the COUNTY's policies and the constitutional violations experienced by DECEDENT. It is asserted that the COUNTY's failure to provide adequate medical care and oversight in its detention facilities is not merely a series of isolated incidents but is indicative of a systemic issue perpetuated by entrenched policies and practices.

101.   The COUNTY's inadequate staffing of medical professionals, as evidenced in the numerous incidents cited below, directly contributes to the inability to provide timely and sufficient medical care to detainees. This systemic deficiency in medical staffing and resources is a policy decision by the COUNTY, resulting from budgetary allocations and hiring practices. Such decisions, made at the policy-making level, directly impact the quality of care accessible to detainees, leading to severe consequences, including the loss of life.

102.   Moreover, the COUNTY's pattern of insufficient training and oversight of its employees in handling medical emergencies and care for detainees demonstrates a deliberate indifference to the health and safety of those in its custody. The COUNTY's training programs and supervisory protocols, or lack thereof, are a product of policy decisions. These policies foster an environment

where neglect of detainees' medical needs is normalized and perpetuated, directly contributing to the constitutional violations suffered by DECEDENT here.

103.   The Plaintiffs also highlight the COUNTY's disciplinary practices or the lack thereof concerning the mistreatment of detainees. The minimal to non-existent disciplinary actions against officers and staff for neglecting detainees' medical needs are a reflection of the COUNTY's policies. This lack of accountability reinforces a culture of impunity, encouraging the continuation of these constitutional violations and causing the violations of DECEDENT's constitutional rights here.

104.   In sum, the COUNTY's decisions regarding staffing, training, supervision, and discipline within its detention facilities are not isolated administrative choices but are reflective of deeper, institutionalized policies. These policies are the 'moving force' behind the repeated and systemic constitutional violations experienced by the DECEDENT and others in the custody of the COUNTY. Thus, the causal link between the COUNTY's policies and the constitutional infringements is both direct and substantial.

105.   Further, the following cases demonstrate a pattern and practice of the COUNTY maintaining unconstitutional customs, practices and policies, including an unconstitutional custom and policy of failing to provide medical treatment and/or ignoring basic care such that inmate died. These cases also show a pattern and practice of the COUNTY related to in-custody deaths:

    a)  Decedent's family brought a lawsuit against COUNTY for the decedent's death while in-custody. *Josepht et al. v. County of Riverside*, et al. Case No.5:20-cv-0329-CJC. From on or about August 19, 2019 to October 6, 2019, the decedent required medical attention at the Riverside County Sheriff's Department Jail. The decedent was allegedly denied of adequate medical attention and subsequently died.

b) Decedent's family brought a lawsuit against COUNTY for the decedent's death while in-custody. *Guitierrez, et al. v. County of Riverside*, et al. No. 5:22-cv-01209-SSS. Decedent was a pre-trial detainee at the Riverside County Jail. He was not given immediate medical attention while in custody and subsequently died.

c) A plaintiff brought a lawsuit based on the alleged facts that he was a pre-trial detainee in Riverside County's detention center but denied medical attention. He further alleged that his requests for medical attention while in-custody were repeatedly ignored even though the need for medical attention was apparent for the injury to his foot. Subsequently he had to undergo an amputation surgery. *Crossman v. County of Riverside, et al.* No. 5:22-cv-01226-SSS.

d) In the matter of *Mary Garcia et al. v. County of Riverside*, Case No. 5:18-cv-839 SJO (Asx), the County of Riverside and former Riverside County Sheriff Stanley Sniff were sued for the wrongful death after deputies used excessive force on decedent inmate Phillip Garcia. While in custody, Garcia was placed into a small Sobering Cell. Deputies in that matter should have known that Garcia was suffering from a psychotic episode and required mental health treatment. Plaintiffs alleged that no medical care was provided to the decedent. The case settled in year 2019.

e) In the matter of *Quinton Gray et al. v. County of Riverside*, Case No. EDCV 13-0444 VAP (OPx), the County of Riverside / Riverside County Sheriff's Department was placed on notice of its failures when the plaintiffs sought injunctive relief to stop the County of Riverside's longstanding and routine practice of failing and refusing to obtain/provide medical care to inmates in the Riverside County Jails.

f) In *Russell Regalado v. Riverside County*, 5:20-cv-01578-JGB-KK, the Plaintiff alleged that he was beaten unconscious by several jail deputies in the strip search area of the jail facility and then locked in a padded cell for hours and was denied of medical care.

106.   Plaintiffs bring this claim as successors in interest to DECEDENT. Plaintiffs seek survival damages permitted by law under this claim. Plaintiffs further seek attorney's fees under this claim pursuant to 42 U.S.C. section 1988.

### SIXTH CLAIM FOR RELIEF

**Supervisory and Municipal Liability – Ratification – (42 U.S.C. §1983)**
(By Plaintiffs against Defendants COUNTY)

107.   Plaintiffs hereby repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

108.   DEFENDANT DEPUTIES, DEFENDANT NURSES, and CHAD BIANCO acted under color of state law and within the course and scope of their employment with the COUNTY.

109.   The acts of Defendants as set forth above deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution, including Plaintiffs' constitutional rights to be free from interference with their familial relationship with their son, DECEDENT, as well as DECEDENT's constitutional right to adequate and timely medical attention.

110.   Upon information and belief, Sheriff CHAD BIANCO, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DEFENDANT DEPUTIES and DEFENDANT NURSES, ratified (or will ratify) the acts of Defendants 4–9 and the bases for them. On information and belief, the final policymaker knew of and specifically approved of

-25-

(or will specifically approve of) Defendants' acts, including a determination that Defendants' acts were "within policy."

111. On information and belief, DEFENDANT DEPUTIES and DEFENDANT NURSES were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the denial of medical care to DECEDENT, which resulted in DECEDENT's injuries and death.

112. By perpetuating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts of not providing adequate and timely medical attention to inmates, Sheriff CHAD BIANCO acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and Sheriff CHAD BIANCO were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT.

113. Plaintiffs further clarify and assert that the unconstitutional actions and inactions of DEFENDANT DEPUTIES, as detailed in the preceding paragraphs, were not only known to but also explicitly approved by final policymakers within the COUNTY. This approval constitutes a deliberate choice by these policymakers to sanction and perpetuate such unconstitutional acts.

114. Evidence suggests that the COUNTY, through its final policymakers, has established, endorsed, and maintained policies or customs that effectively ratify the unconstitutional actions of its employees. These policies are not merely passive oversights but active endorsements of practices that have repeatedly violated constitutional rights.

115. Specifically, the COUNTY's final policymakers have demonstrated a consistent pattern of ignoring or dismissing complaints, failing to investigate incidents thoroughly, and failing to discipline or retrain officers involved in

constitutional violations. This pattern evidences an institutional stance that tacitly approves such actions.

116.   Furthermore, the COUNTY's failure to revise or rectify policies and practices, even in the face of recurring similar incidents, indicates a deliberate indifference to constitutional rights. This indifference is attributable to the COUNTY's final policymakers, who have the authority and capacity to make substantial changes but choose not to.

117.   In addition, specific actions and decisions by the COUNTY's final policymakers in the aftermath of reported incidents illustrate an explicit ratification of unconstitutional actions. These include instances where policymakers have publicly defended the actions of officers involved in constitutional violations or have made determinations that such actions were within policy, despite evidence to the contrary.

118.   Therefore, it is not merely the acts of individual officers that have led to the deprivation of constitutional rights, but a broader policy and practice endorsed and ratified by the COUNTY's final policymakers. This policy and practice have created an environment where unconstitutional acts are not only possible but are also likely to occur with impunity."

119.   Recent developments have underscored the severity of the situation within the Riverside County jail system, particularly concerning the prevalence of drug overdose deaths. On February 23, 2023, the California Attorney General announced that his office has launched an investigation into the Riverside County Sheriff's Department, prompted by a significant and concerning rise in deaths due to drug overdoses in the county's jails.

120.   The announcement came after a particularly deadly year in the Riverside County jail system. In 2022, 18 individuals died while incarcerated in Riverside County jails, the highest number for the County in the last 15 years.

121.   This investigation focuses on whether there is a pattern or practice of unconstitutional conduct, including deliberate indifference to the health and safety of inmates, specifically in relation to the handling of drug use and overdoses within the jails.

122.   The COUNTY's response, or rather the lack of an appropriate response to these overdose deaths, suggests a ratification of the unconstitutional acts and omissions by its officers. Such inaction in the face of a clear pattern of overdose deaths demonstrates a deliberate indifference to the rights and well-being of inmates, attributable to the COUNTY's final policymakers.

123.   Additionally, the COUNTY's failure to hold its employees accountable for their actions or inactions in these overdose incidents reflects a policy of tacit approval. By not disciplining, retraining, or taking appropriate corrective measures against staff involved in these incidents, the COUNTY effectively ratifies their conduct.

124.   The systemic nature of these failures, as highlighted by the Attorney General's investigation, indicates that the issues of drug overdoses and the consequent deaths in the COUNTY's jails are not merely the result of individual negligence, but rather the outcome of institutional policies and practices, or the lack thereof, sanctioned and perpetuated by the COUNTY's final policymakers.

125.   The following cases demonstrate a pattern and practice of the COUNTY ratifying unjustified and unconstitutional in-custody deaths:

a)   Decedent's family brought a lawsuit against COUNTY for the decedent's death while in-custody. *Josepht et al. v. County of Riverside*, et al. Case No.5:20-cv-0329-CJC. From on or about August 19, 2019 to October 6, 2019, the decedent required medical attention

at the Riverside County Sheriff's Department Jail. The decedent was allegedly denied of adequate medical attenion and subsequently died.

b) Decedent's family brought a lawsuit against COUNTY for the decedent's death while in-custody. *Guitierrez, et al. v. County of Riverside*, et al. No. 5:22-cv-01209-SSS. Decedent was a pre-trial detainee at the Riverside County Jail. He was not given immediate medical attention while in custody and subsequently died.

c) A plaintiff brought a lawsuit based on the alleged facts that he was a pre-trial detainee in Riverside County's detention center but denied of medical attention. He further alleged that his requests for medical attention while in-custody were repeatedly ignored even though the need for medical attention was apparent for the injury to his foot. Subsequently he had to undergo an amputation surgery. *Crossman v. County of Riverside, et al*. No. 5:22-cv-01226-SSS.

d) In the matter of *Mary Garcia et al. v. County of Riverside*, Case No. 5:18-cv-839 SJO (Asx), the County of Riverside and former Riverside County Sheriff Stanley Sniff were sued for the wrongful death after deputies used excessive force on decedent inmate Phillip Garcia. While in custody, Garcia was placed into a small Sobering Cell. Deputies in that matter should have known that Garcia was suffering from a psychotic episode and required mental health treatment. Plaintiffs alleged that no medical care was provided to the decedent. The case settled in year 2019.

e) In the matter of *Quinton Gray et al. v. County of Riverside*, Case No. EDCV 13-0444 VAP (OPx), the County of Riverside / Riverside County Sheriff's Department was placed on notice of its failures when the plaintiffs sought injunctive relief to stop the County of Riverside's

/ Riverside County Sheriff's Department's longstanding and routine practice of failing and refusing to obtain/provide medical care to inmates in the Riverside County Jails.

  f)  In *Russell Regalado v. Riverside County*, 5:20-cv-01578-JGB-KK, the Plaintiff alleged that he was beaten unconscious by several jail deputies in the strip search area of the jail facility and then locked in a padded cell for hours and was denied of medical care.

126.  By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, and DECEDENT suffered pre-death pain and suffering and death. Accordingly, the COUNTY is liable to Plaintiffs for damages permitted by law.

127.  Plaintiffs bring this claim as successors in interest to DECEDENT. Plaintiffs seek survival damages for the violations of DECEDENT's constitutional rights, including his constitutional right to adequate medical care and safe condition of confinement. Plaintiffs seek damages permitted by law and seek attorney's fees under this claim under 42 U.S.C. section 1988.

## SEVENTH CLAIM FOR RELIEF

### Negligence

(By Plaintiffs against KYLE LAWRENCE, JERON JUSTICE, PETER FUENTES, and CITY)

128.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

129.  Law enforcement officers, including DEFENDANT OFFICERS have a duty to use reasonable care to prevent harm or injury to others. This duty

includes calling for an ambulance for medical assessment of a person they seized and arrested.

130. DEFENDANT OFFICERS breached such duty of care. Upon information and belief, the actions and inactions of DEFENDANT OFFICERS were negligent and reckless, including but not limited to:

(a) the failure to properly and adequately assess DECEDENT's need for adequate medical attention/treatment;

(b) the failure to provide prompt and adequate medical care to DECEDENT;

(c) the failure to protect DECEDENT while he was in custody and care of CITY

(d) the negligent communication of information during the incident; and

(e) the failure to provide appropriate responses to obvious mental health crisis calls.

131. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT experienced pain and suffering and ultimately died. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered emotional distress and mental anguish. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

132. CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS, inclusive pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

133.   Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT. Plaintiffs seek survival damages, including pain and suffering, and wrongful death damages under this claim.

## EIGHTH CLAIM FOR RELIEF

### Violation of Cal. Civil Code § 52.1

(By Plaintiffs against KYLE LAWRENCE, JERON JUSTICE, PETER FUENTES, and CITY)

134.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

135.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from intentionally interfering with a person's constitutional rights, which can be shown by a reckless disregard for that person's constitutional rights. Here, DEFENDANT OFFICERS acted with a reckless disregard for DECEDENT's constitutional rights when they continuously ignored DECEDENT's conditions and need for adequate medical attention/treatment, which shows DEFENDANT OFFICERS's intent to violate DECEDENT's constitutional rights.

136.   On information and belief, DEFENDANT OFFICERS, while working for the CITY and acting within the course and scope of their duties, acted in reckless disregard of DECEDENT's civil rights, including by ignoring DECEDENT's condition and need for adequate medical attention/treatment and denying him necessary medical care, to prevent him from exercising his right to have adequate medical attention, or to retaliate against him for having exercised his rights, to be free from state actions that shock the conscience, and to life, liberty, and property.

-32-
THIRD AMENDED COMPLAINT

137.   On information and belief, Defendants specifically intended to violate DECEDENT's constitutional rights as stated above, as demonstrated by DEFENDANT OFFICERS's reckless disregard for DECEDENT's constitutional rights to have adequate medical attention and be free from denial of medical care, which he was fully entitled to enjoy. Thus, Plaintiffs can recover for violation of the Bane Act as successors-in-interest to DECEDENT.

138.   On information and belief, DECEDENT reasonably believed and understood that the acts committed by DEFENDANT OFFICERS were intended to coercively interfere with DECEDENT's civil rights, to discourage him from exercising the above civil rights or to prevent him from exercising such rights.

139.   Defendants successfully interfered with the above civil rights of DECEDENT.

140.   The conduct of Defendants was a substantial factor in causing DECEDENT's harms, losses, injuries, death and damages.

141.   CITY is vicariously liable for the wrongful acts of DEFENDANT OFFICERS, inclusive pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

142.   The conduct of Defendants was malicious, wanton, oppressive, and/or accomplished with a conscious disregard for DECEDENT's rights, justifying an award of exemplary and punitive damages as to DEFENDANT OFFICERS.

143.   Plaintiffs bring this claim as successors-in-interest to DECEDENT and seek survival damages, including emotional distress, loss of life, and loss of enjoyment of life under this claim. Plaintiffs also seek treble damages, attorney's fees, and costs under this claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs individually and as successors-in-interest to DECEDENT, request entry of judgment in their favor and against Defendants COUNTY OF RIVERSIDE, CITY OF INDIO, KYLE LAWRENCE, JERON JUSTICE, PETER FUENTES, CARSON VENTURA, TAYLOR SMITH, MARK HERMOSILLA, LUIS MONTEZ AVILA, ALLYSON TOVAR, JUAN VIRAMONTES, LAWRENCE PONCE, YURI LOPEZ, ALEJANDRO VELAZQUEZ, DOE 9, and CHAD BIANCO, inclusive, as follows:

A.   For compensatory damages, including both survival damages and wrongful death damages under federal law, in an amount to be proven at trial;

B.   For funeral and burial expenses, and loss of financial support;

C.   For punitive damages against the individual defendants in an amount to be proven at trial;

D.   For statutory damages;

E.   For interest;

F.   For reasonable attorneys' fees, including litigation expenses;

G.   For costs of suit; and

H.   For such further relief as the Court may deem just, proper, and appropriate.

DATED:  February 2, 2024        LAW OFFICES OF DALE K. GALIPO

By _____

Dale K. Galipo
Attorneys for Plaintiffs

-34-
THIRD AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

DATED:  February 2, 2024            LAW OFFICES OF DALE K. GALIPO

By _____

Dale K. Galipo
Attorneys for Plaintiffs